## STATE OF CONNECTICUT *v.* ROBERT L. PARKER
### (12445)

PETERS, C. J., HEALEY, PARSKEY, DANNEHY and SANTANIELLO, Js.

Argued October 10—decision released December 18, 1984

*Edward F. Scully,* with whom, on the brief, was *Kathleen B. Martin,* for the appellant (defendant).

*Steven M. Sellers,* deputy assistant state's attorney, with whom were *John M. Massameno,* assistant state's attorney, and, on the brief, *John Bailey,* state's attorney, for the appellee (state).

PARSKEY, J. The defendant was charged in a substitute information[1] with the crimes of burglary in the third degree and larceny in the second degree, both class D felonies.[2] On October 1, 1981, the court, *Fishman, J.*, granted the defendant's application for accelerated rehabilitation pursuant to General Statutes § 54-56e[3] and released him to the custody of the office of adult probation for a period of two years. On Sep-

---

[1] The defendant was initially charged with larceny in the first degree, a class C felony. Under the accelerated rehabilitation statute, General Statutes § 54-56e, persons charged with class A, B, or C felonies are not eligible for accelerated rehabilitation.

[2] Public Acts 1982, No. 82-271, § 2, made larceny in the second degree a class C felony.

[3] On October 1, 1981, General Statutes § 54-56e, as amended by Public Acts 1981, No. 81-446, § 4, provided: "There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime, not of a serious nature. The court may, in its discretion, invoke such program on motion of the defendant or on motion of a state's attorney or prosecuting attorney with respect to an accused who, the court believes, will probably not offend again and who has no previous record of conviction of crime and who states under oath in open court under the penalties of perjury that he has never had such program invoked in his behalf, provided the defendant shall agree thereto and provided notice has been given by the accused, on a form approved by rule of court, to the victim or victims of such crime, if any, by registered or certified mail and such victim or victims have an opportunity to be heard thereon. This section shall not be applicable to any person charged with a violation of section 14-227a . . . . Unless good cause is shown, this section shall not be applicable to persons accused of a class A, class B, or class C felony or to any youth who has previously been adjudged a youthful offender under the provisions of sections 54-76b to 54-76n, inclusive. Any defendant who enters such program shall agree to the tolling of any statute of limitations with respect to such crime and to a waiver of his right to a speedy trial. Any such defendant shall appear in court and shall be released to the custody of the office of adult probation for such period, not exceeding two years, and under such conditions as the court shall order. If the defendant refuses to accept, or, having accepted, violates such conditions, his case shall be brought to trial. If such defendant satisfactorily completes his period of probation, he may apply for dismissal of the charges against him and the court, on finding such satisfactory completion, shall dismiss such charges."

Section 54-56e was subsequently amended in 1982; Public Acts 1982, No. 82-9; and in 1983. Public Acts 1983, No. 83-534, § 7. Neither of those amendments changed § 54-56e in any way relevant to this appeal.

tember 30, 1983, the defendant, claiming that he had successfully completed his period of probation, filed a motion for dismissal of the charges, which the court, *Kline, J.,* denied and the defendant appealed.[4] At an earlier stage of these proceedings we denied the state's motion to dismiss the appeal without prejudice to a renewal of the motion at the time of oral argument. Because on plenary consideration we are persuaded that the trial court's decision is not appealable, we now grant the state's renewed motion and order the appeal dismissed.

The general rule as to appealability of trial court decisions is well settled in our state. "Appeals to this court may be taken from final judgments or actions of the Superior Court. General Statutes § 51-197a. In a criminal case the imposition of sentence is the final judgment of the court. *State* v. *Grotton,* 180 Conn. 290, 293, 429 A.2d 871 (1980); *State* v. *Moore,* 158 Conn. 461, 463, 262 A.2d 166 (1969). Interlocutory rulings in criminal cases generally are not appealable." *State* v. *Spendolini,* 189 Conn. 92, 93, 454 A.2d 720 (1983). In certain rare circumstances, interlocutory appeals are permitted if they satisfy a two-pronged test recently articulated by this court in *State* v. *Curcio,* 191 Conn. 27, 463 A.2d 566 (1983). "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes

---

[4] The specific circumstances surrounding the trial court's denial of the defendant's motion to dismiss the charges are unimportant in view of our decision that this ruling is not reviewable until after final disposition of the case on the merits. In holding that the denial of a motion to dismiss an indictment due to an alleged violation of the defendant's sixth amendment right to a speedy trial was not entitled to interlocutory review, the United States Supreme Court stated: " 'Appeal rights cannot depend on the facts of a particular case.' *Carroll* v. *United States,* 354 U.S. 394, 405 [77 S. Ct. 1332, 1 L. Ed. 2d 1442] (1957). The factual circumstances that underlie a speedy trial claim, however 'extraordinary,' cannot establish its independent appealability prior to trial." *United States* v. *MacDonald,* 435 U.S. 850, 857 n.6, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978).

the rights of the parties that further proceedings cannot affect them." Id., 31. Since there has been no final judgment in this case, we must analyze the defendant's claim under the standards developed in *Curcio* to determine whether an appeal will lie.

Our initial inquiry focuses on whether the trial court's denial of the motion to dismiss the charge "terminates a separate and distinct proceeding." *State* v. *Curcio*, supra, 31. A criminal prosecution is a proceeding instituted by the state to obtain punishment against a person charged with and found guilty of a public offense. It embraces not only the accusation, whether by indictment or information, and the determination of guilt or innocence, but also, in the case of a conviction, the imposition of sentence. If the interlocutory ruling is merely a step along the road to final judgment then it does not satisfy the "separate and distinct proceeding" requirement of the first prong of *Curcio. State* v. *Longo*, 192 Conn. 85, 89, 469 A.2d 1220 (1984). Obviously a ruling affecting the merits of the controversy would not pass the first part of the *Curcio* test. The fact, however, that the interlocutory ruling does not implicate the merits of the principal issue at the trial, namely, whether the accused is guilty of the crime charged, does not necessarily render that ruling appealable.[5] It must appear that the interlocutory ruling will not impact directly on any aspect of the prosecution.

---

[5] For example, the denial of a motion to dismiss an indictment because the sole evidence against the defendant was allegedly seized in violation of his fourth amendment rights is not appealable before conviction, regardless of the fact that in ruling on the motion, the court is not in the least concerned with the defendant's guilt but focuses instead on the circumstances surrounding his arrest. See *Cogen* v. *United States,* 278 U.S. 221, 49 S. Ct. 118, 73 L. Ed. 275 (1929); see also *United States* v. *MacDonald,* 435 U.S. 850, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978) (denial of motion to dismiss on speedy trial grounds not appealable before trial).

The "separate and distinct" requirement of *Curcio* demands that the proceeding which spawned the appeal be independent of the main action. See *Potter* v. *Appleby,* 136 Conn. 641, 643, 73 A.2d 819 (1950) (application to dissolve an attachment, "[w]hile it is ancillary to the main action for damages . . . is distinct from and independent of that action," and an order issued thereon "would be a final judgment from which an appeal could be taken."); *Wardell* v. *Killingly,* 96 Conn. 718, 722, 115 A. 539 (1921) (denial of applications for orders of *mandamus,* in a pending action, are appealable final judgments because "the applications are independent actions, they are not merely ancillary to the main action."); *Sachs* v. *Nussenbaum,* 92 Conn. 682, 685–86, 104 A. 393 (1918) (order dissolving an attachment was appealable final judgment because "[t]he proceedings . . . were . . . not only in fact and form, but also of necessity, entirely independent of that action and not incidental to it. . . . The order could not be regarded as in any sense an interlocutory one made in progress of the pending suit. That progress was not concerned with nor in any way affected by it.") This means that the "separate and distinct proceeding," though related to the central cause, must be severable therefrom. The question to be asked is whether the main action could proceed independent of the ancillary proceeding. Applying that standard to this case, it is clear that a criminal prosecution could not progress while the issues surrounding accelerated rehabilitation were pending on appeal.

Both an application for accelerated rehabilitation and a motion for dismissal of the charge grounded on a claimed successful completion of the conditions of such rehabilitation impact directly on the prosecution of the crime charged. The former seeks to suspend prosecution during a stated probationary period not to exceed two years while the latter moves to terminate the prose-

cution completely. Each is part of a discretionary pretrial diversionary program developed by the legislature as a possible alternative to prosecution for certain defendants. The very structure and purpose of the statutory scheme dictates that it is an additional and possibly final step in the criminal process. Since the effect of accelerated rehabilitation is to delay, and possibly to end, criminal prosecution, it can in no way constitute a "separate and distinct proceeding" within the meaning of the *Curcio* test.[6]

It is useful to examine the defendant's claim to interlocutory review in light of the policy considerations underlying the final judgment rule. In *Cobbledick* v. *United States,* 309 U.S. 323, 60 S. Ct. 540, 84 L. Ed. 783 (1940), the United States Supreme Court considered the purpose and effect of prohibiting interlocutory appeals in the criminal context. The reason behind "forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy" is to avoid "the obstruction to just claims that would come from permitting the harrassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment." Id., 325. Noting that "[t]hese considerations of policy are especially compelling in the administration of criminal justice," the court observed that although "[a]n accused is entitled to scrupulous observance of constitutional safeguards . . . encouragement of delay is fatal to the vindication of the criminal law." Id. Thus, a party will not "be allowed to take to the upper court a ruling where the result of review will be

---

[6] In its effect on the main action, accelerated rehabilitation operates to postpone criminal prosecution in much the same way that a motion to stay impacts on a civil case. In *Gores* v. *Rosenthal,* 148 Conn. 218, 221, 169 A.2d 639 (1961), we held that "[a]n order staying proceedings does not terminate the action but merely postpones its disposition. It may be modified or vacated by the court whenever, in the exercise of a sound discretion, it is considered necessary or proper to do so. . . . It is an interlocutory order." (Citations omitted.)

'to halt in the orderly progress of a cause and consider incidentally a question which has happened to cross the path of such litigation. . . .' " (Citation omitted.) Id., 326.

The overarching principle involved in prosecution of crime is that justice be swift and sure. If the defendant is guilty then he should be brought to book and punished without delay and if he is innocent then the cloud of accusation should be removed as speedily as circumstances permit. Piecemeal appeals are disfavored because the delay resulting therefrom does not serve the public's interest in swift and certain justice. Allowing an interlocutory appeal from either the denial of an application for accelerated rehabilitation, or the denial of a motion to dismiss the charge pursuant to the rehabilitation statute, would necessarily delay the criminal prosecution pending its outcome to the potential prejudice of either the state or the defendant. Such delay is in direct contravention of the important policies served by the rule against interlocutory review.

The first prong of *Curcio* not having been satisfied, we next consider whether the right created by the statute would be irreparably lost unless interlocutory review is permitted. *State* v. *Spendolini,* supra, 95. General Statutes § 54-56e establishes a discretionary "pretrial program of accelerated rehabilitation of persons accused of a crime, not of a serious nature." In *State* v. *Spendolini,* supra, we held that denial of a motion for admission to this program is not appealable, first because the statute does not encompass a right not to be tried; id., 96; and second because an erroneous ruling may be redressed on appeal after conviction and therefore whatever rights are embodied in the statute will not be irreparably lost by compelling the defendant to await the outcome of the trial. Id., 97. We analogized the situation to cases involving claimed immunity from prosecution; *Heike* v. *United States,* 217 U.S. 423,

30 S. Ct. 539, 54 L. Ed. 821 (1910); the point being that just as immunity from prosecution provides a shield, not against prosecution but rather against successful prosecution, so too the rehabilitation statute affords protection against punishment rather than protection against trial.

The fact that the order terminating the defendant's participation in accelerated rehabilitation may have been rendered without a proper notice and hearing has no bearing on the issue of appealability.[7] Appealability depends on the nature of the ultimate right sought to be vindicated and the effect of the trial court's decision on the vindication of this right. Any rights, such as a right to a hearing, which are incidental to the ultimate right, rise or fall with it. A decision otherwise nonappealable before trial does not become subject to interlocutory review merely because it is rendered without a hearing. To hold otherwise would tend to blur the distinction between the generality of nonappealable interlocutory orders and final judgments. It could always be argued, for example, with respect to any interlocutory order, that the hearing at which it was rendered was not conducted in a meaningful manner or at a meaningful time, in which case the challenge to the hearing would become the open sesame for pretrial review of otherwise interlocutory orders. The consequent delays would frustrate criminal prosecutions to the detriment of the public interest.

---

[7] By holding that the right asserted by the defendant is not one that "would be lost, probably irreparably, unless interlocutory review was permitted"; *State* v. *Spendolini,* 189 Conn. 92, 95, 454 A.2d 720 (1983); we imply no view on the merit of the defendant's claim or on the more general question of the process due a defendant upon a motion to dismiss charges or to revoke pretrial probation under the accelerated rehabilitation statute. We merely hold that an order denying a motion to dismiss charges or terminating accelerated rehabilitation is not a collateral order that can be appealed prior to trial.

The fact that in this case the defendant has been admitted to the diversionary program does not in any way change the essential nature of the statutory right. The only right that the defendant may earn under the accelerated rehabilitation statute is the right to a dismissal of the charges against him, a right that is expressly conditioned on satisfactory completion of the period of probation. If the trial court determines that the defendant did not fulfill the conditions of probation, the charges will not be dismissed and the defendant may be required to go to trial. There is nothing to prevent the defendant, if convicted, from appealing the trial court's decision and, upon a finding of error, having the conviction set aside and the charges dismissed. Thus, the defendant's right to a dismissal of the charges, if such right in fact existed at the end of the probationary period, is fully capable of being vindicated after trial. "Bearing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship." *Cobbledick* v. *United States,* supra, 325. How much more so is this true of a person who may be guilty of the offense charged but whom the legislature has declared a worthy candidate for a second chance.

There is a small class of cases which meets the test of being effectively unreviewable on appeal from a final judgment and which, therefore, is subject to interlocutory review. The paradigmatic case in this group involves the right against double jeopardy. *State* v. *Moeller,* 178 Conn. 67, 420 A.2d 1153, cert. denied, 444 U.S. 950, 100 S. Ct. 423, 62 L. Ed. 2d 320 (1979). Because jeopardy attaches at the commencement of trial, to be vindicated at all, a colorable double jeopardy claim must be addressed by way of interlocutory review. No such considerations obtain in the case of an allegedly rehabilitated person claiming to be entitled to a dismissal of the charges. There is a crucial distinc-

tion to be drawn between a right not to be tried and a right whose remedy requires the dismissal of charges. *United States* v. *Hollywood Motor Car Co.,* 458 U.S. 263, 269, 102 S. Ct. 3081, 73 L. Ed. 2d 754 (1982). The former necessarily falls into the category of rights that can be enjoyed only if vindicated prior to trial. The latter does not. Id., 269. "Admittedly, there is value—to all but the most unusual litigant—in triumphing before trial, rather than after it, regardless of the substance of the winning claim. But this truism is not to be confused with the quite distinct proposition that certain claims (because of the substance of the rights entailed, rather than the advantage to a litigant in winning his claim sooner) should be resolved before trial." *United States* v. *MacDonald,* supra, 860 n.7.

A claim to a dismissal of the charges based on successful completion of all the conditions imposed under the diversionary program does not fall within that narrow group of claims which meet the test of being effectively unreviewable on appeal from a final judgment.[8] Therefore we conclude that interlocutory review of this claim is not proper.

[8] Although the defendant has appealed from the denial of his motion to dismiss rather than from the order terminating accelerated rehabilitation, an appeal from the latter order would yield the same result. Our discussion with respect to the appealability of a denial of a motion to dismiss charges pursuant to the accelerated rehabilitation statute applies with equal force to an appeal from an order terminating the defendant's participation in the rehabilitation program. This case is to be distinguished from cases involving revocation of post-conviction probation. In those situations, as contrasted with the case before us, the final judgment, namely, the sentence, has already been rendered. In *State* v. *Roberson,* 165 Conn. 73, 327 A.2d 556 (1973), we held that an order revoking post-conviction probation was an appealable final judgment. "The inquiry preceding a revocation of probation concerns matters totally independent of the original conviction, the decision of the court marks the final disposition of a judicial proceeding authorized by statute and it is, in effect, a final modification of the sentence which is the judgment of the court in the proceedings against the defendant. We conclude that the order revoking probation and implementing the sentence of confinement with its consequent deprivation of the defendant's liberty meets the test of a final judgment." Id., 82.

The appeal is dismissed.

In this opinion PETERS, C. J., and SANTANIELLO, J., concurred.

ARTHUR H. HEALEY, J., with whom DANNEHY, J., joins, dissenting. I conclude that the order appealed from by the defendant is a final judgment, hence appealable, in the circumstances of this case. Such a determination is required in this case under the second prong of finality in *State* v. *Curcio,* 191 Conn. 27, 463 A.2d 566 (1983), which makes an otherwise interlocutory order appealable "(2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. I, therefore, do not agree with the dismissal of his appeal.

"General Statutes § 54-56e, establishes a *discretionary pretrial diversionary program in certain criminal cases."* (Emphasis added.) *State* v. *Spendolini,* 189 Conn. 92, 95, 454 A.2d 720 (1983). The defendant's application, dated September 24, 1981, required, inter alia, that he agree to waive his right to a speedy trial and to the tolling of any statute of limitation. See General Statutes § 54-56e. On October 1, 1981, the court, *Fishman, J.,* exercised its discretion and "invoked" the program in granting the defendant's application for accelerated rehabilitation under the statute and placed him on probation for two years to October 1, 1983—the *maximum* probationary period permitted under the statute. Two years later, on September 30, 1983, (October 1, 1983, fell on a Saturday) because the defendant had sought to ascertain if his probation had been satisfactorily completed,[1] a "hearing" was held

---

[1] While the record is not clear as to the nature of the restitution ordered at the outset, the prosecutor did inform the court on September 30, 1983, that "restitution of three hundred dollars [has] been made."

on his motion to dismiss the charges concerning which
the court had ordered his participation in the acceler-
ated rehabilitation program. On that date, the court,
*Kline, J.,* raised the question of two arrests of the
defendant made on August 3, 1983, on charges that
were still pending. At the same time, the court also
noted that the probation officer indicated (in his report)
that "he [the defendant] reported faithfully and every-
thing else while he was on A/R [sic] . . . ."[2] Noting
tersely that these arrests were "further involvement
with the law"[3] and that September 30, 1983, was the
final day on which it could act, the court denied the
motion for dismissal.

In its brief on this appeal, the state candidly concedes,
as it must, that "the trial court clearly premised its
order revoking the defendant's probation upon the
*arrests* of the defendant during the probationary
period." (Emphasis added.) As such, the state further
concedes "that the court therefore revoked the defend-
ant's probation upon insufficient grounds." See *State*
v. *Barnes,* 37 Conn. Sup. 853, 858, 439 A.2d 456 (1981).

Our decision in *State* v. *Longo,* 192 Conn. 85, 469
A.2d 1220 (1984), represents the most recent fine tun-
ing of *State* v. *Curcio,* supra. In speaking to the sec-
ond prong of the *Curcio* test, we said, inter alia: "In
order to satisfy the second prong of the *Curcio* test,
the defendant must do more than show that the trial
court's decision threatens him with irreparable harm.
The defendant must show that that decision threatens
to abrogate a right that he or she *then* holds." (Empha-
sis in original.) *State* v. *Longo,* supra, 91. The *Longo*
majority opined that the dissent, *Healey, J.,* "misses
the point" when it "implies" that the majority "changes
the focus of the finality test so that focus unduly centers

---

[2] At the September 30, 1983 "hearing" the prosecutor said he did not
have any record of the defendant's latest arrest.

[3] The court observed that "further involvement with the law" was what
the "form" said, apparently referring to a condition of probation.

on the time at which the particular right accrues rather than on the extent to which denying appellate review harms that right. We do not focus on the time of a right's accrual but on whether a right *actually exists* for the *particular defendant.*" (Emphasis added.) Id., 93 n.5.[4] The only reasonable interpretation of this language is that each particular defendant stands or falls on the circumstances of his particular case.[5] See also *State* v. *Curcio,* supra, 37 ("the claim must assert a recognized right that inheres *in the circumstances.*" [Emphasis added.]). This "particular" defendant, Parker, has a presently reviewable right that satisfies the final judgment requirement under the circumstances of this case. "[T]he dispositive issue is whether the defendant already enjoys a right that the order threatens irreparably. If so, the order may be appealed immediately. If the order merely denies an application for privileged status, thereby foreclosing the rights that attend such a status, it may be appealed only after final judgment." *State* v. *Longo,* supra, 93.

---

[4] One court has opined that: "A footnote is as important a part of an opinion as the matter contained in the body of the opinion and has like binding force and effect." *Melancon* v. *Walt Disney Productions,* 127 Cal. App. 2d 213, 214 n.2, 273 P.2d 560 (1954), citing 21 C.J.S., Courts § 221, p. 407 n.3.

[5] The majority's attempted insulation from consideration of the circumstances involved in this particular order in determining its appealability is not persuasive. *State* v. *Parker,* 194 Conn. 650, 652 n.4, 485 A.2d 139 (1984). Citing *United States* v. *MacDonald,* 435 U.S. 850, 857 n.6, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978), and *Carroll* v. *United States,* 354 U.S. 394, 405, 77 S. Ct. 1332, 1 L. Ed. 2d 1442 (1957), the majority attempts to portray the final judgment rule as a doctrine in which the "specific circumstances" are irrelevant and "unimportant" thereto. In *MacDonald,* a speedy trial claim was held to be a nonappealable interlocutory order in the federal system. The *MacDonald* court rested its decision on the premise that resolution of speedy trial claims asserted under *Barker* v. *Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), requires "a careful assessment of the particular facts of the case" and would be "best considered only after the relevant facts have been developed at trial." *United States* v. *MacDonald,* supra, 858. By contrast, in this case all the facts required for deciding the appeal before us have been presented for our consideration; the develop-

"Right is an abstract term. It has no satisfactory definition or explanation except in connection with some concrete conception of the thing out of which it grows." *Hampton* v. *North Carolina Pulp Co.,* 223 N.C. 535, 546, 27 S.E.2d 538 (1943). A "right" has been said to be the legal "consequence" which attaches to certain facts. Holmes, The Common Law, p. 214. On September 30, 1983, two years had already passed since the court below had exercised its discretion to "invoke" the accused's entry into this pretrial diversionary program. General Statutes § 54-56e. Certain changes of position had been bargained for and given between him and the state. He had waived his right to a speedy trial and he had agreed to the tolling of the statute of limitations. The state, in turn, had foregone prosecution for two years. All this was done under the umbrella of this statute that articulates a clear legislative policy that endorses rehabilitation.

The matter came before the court not because the state cited the defendant for failing to discharge his part of the bargain but because he had filed his motion of dismissal. Although he had apparently been arrested over a month earlier there is nothing in this record to show that the state, because of that arrest, even considered, let alone affirmatively tried, revoking his

ment of a trial record is unnecessary to evaluate fully the defendant's claim that the denial of his motion to dismiss was improper in this case. *MacDonald* is, therefore, inapposite.

Reliance on *Carroll* v. *United States* by the majority is particularly unconvincing in light of our decision in *State* v. *Ross,* 189 Conn. 42, 454 A.2d 266 (1983). *Carroll* involved a government appeal from a pretrial order suppressing certain evidence. The holding in *Carroll* that the suppression order was not appealable rested on the policy that appeals by the government in criminal cases "are something unusual, exceptional, not favored." *Carroll* v. *United States,* supra, 400. In *Ross,* supra, however, we ruled that under appropriate circumstances the state could maintain such an appeal. Finally, fairly read, the quotation from *Carroll* that appealability does not "depend on the facts of a particular case" is taken well out of context. That statement in *Carroll* related only to the effect of the dismissal of the government's appeal, not to the *Carroll* court's analysis of whether an order was in fact appealable. *Carroll* v. *United States,* supra, 405.

court-ordered status under the accelerated rehabilitation program. Significantly, as already pointed out, the state concedes that his probation revocation on September 30, 1983, was based upon "insufficient grounds." No amount of fine drawing of any filament of reasoning can be persuasive in demonstrating that, *on September 30, 1983,* this defendant did not have a right to a dismissal of the underlying charges. Given the circumstances, that right, which attached as the legal consequence of his unique factual position, was one which the court order of September 30, 1983, threatened irreparably. The court's action on September 30, 1983, as penultimate as any eleventh hour metaphor could be in this case, scoffs at his right.

Moreover, it defies reality to say this defendant's right is not threatened irreparably. As a concept, "irreparability" must be viewed realistically. The term "irreparable" "connotes the inability to make good, to repair, to retrieve or to atone for." *Murray* v. *Egan,* 28 Conn. Sup. 204, 208, 256 A.2d 844 (1969); 48A C.J.S., Irreparable, p. 229. In the present case, the defendant had the right to a dismissal of the charges. Instead, the majority would have him first face prosecution, trial, and possible conviction; and only then would the defendant have the right to maintain an appeal to this court finally seeking appropriate relief, i.e., a ruling that the trial court's refusal to dismiss the underlying charges on September 30, 1983, was erroneous and that he therefore never should have been tried at all.

This defendant is not like the defendant in *State* v. *Bell,* 179 Conn. 98, 425 A.2d 574 (1979), or in *State* v. *Spendolini,* 189 Conn. 92, 454 A.2d 720 (1983), where both appeals were sought from the trial court's denial of being permitted to *enter* the youthful offender program as in *Bell* and from being permitted to *enter* the accelerated rehabilitation program as in *Spendolini.*

Rather, this defendant had *already* been admitted by the court into the program and, at the time of revocation, had been in it for the maximum possible time on September 30, 1983. The legal consequences attendant upon his participation for that time certainly coupled with the admittedly "insufficient grounds" for denying his motion to dismiss had ripened into a right the denial of which results in a final judgment. To say, as the majority does, that he has no such right, but rather must await possible vindication after a trial is to endorse an injustice that rejects not only reason and common sense, but also legal analysis. In sum, the unique circumstances of this "particular" defendant satisfy the second final judgment prong of *Curcio*; it is not a piecemeal appeal. To assure that justice for Robert Parker will be as swift and sure as possible, I would hold that this is a final judgment.

Therefore, I dissent.