AFSCME, COUNCIL 4, LOCAL 1565 *v.* DEPARTMENT OF CORRECTION ET AL.
(AC 28320)

Harper, Lavine and Beach, Js.

Argued January 15—officially released April 29, 2008

*J. William Gagne, Jr.*, with whom, on the brief, was *Kimberly A. Cuneo*, for the appellant (plaintiff).

*Thomas P. Clifford III*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellees (defendants).

*Opinion*

LAVINE, J. The plaintiff, AFSCME, Council 4, Local 1565, appeals from the judgment of the trial court denying its application to vacate an arbitration award upholding the discharge of Eunice Smith from her employment with the defendant department of correction.[1] On appeal, the plaintiff claims that the court's denial of its application to vacate was improper because the arbitration award (1) exceeded the arbitrator's authority in violation of General Statutes § 52-418 (a) (4) and (2) violated the clear public policy underlying General Statutes § 54-56e, the statute for the pretrial program for accelerated rehabilitation. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's claim. On January 17, 2003, as the result of a police investigation into a complaint that Smith, a correction officer, had threatened to shoot a coworker for refusing to answer questions about a union related posting, Smith was arrested and charged with making threats, breach of the peace and inciting injury to a person. On January 19, 2003, the police conducted a search of Smith's residence in order to confiscate a weapon registered to her. Due to

---

[1] We refer to the department of correction as the defendant. The other defendants in this action are the office of the attorney general and the board of mediation and arbitration of the department of labor.

the officers' discovery of a partially smoked marijuana cigarette and a pill bottle under Smith's bed, Smith was charged with possession of marijuana and drug paraphernalia.

On May 19, 2003, Smith told the captain conducting the defendant's investigation that she had accepted accelerated rehabilitation for the charges against her. On August 27 and September 17, 2003, the defendant held predisciplinary hearings on the matter. Through its investigation, the defendant found that Smith had been arrested and charged with threatening, inciting injury to persons, breach of the peace and possession of marijuana and drug paraphernalia. On November 6, 2003, Smith was dismissed from state service for on and off duty misconduct which violated administrative directive 2.17 of the parties' collective bargaining agreement.[2]

The plaintiff timely filed a grievance on behalf of Smith. After its grievance was denied, the plaintiff proceeded to arbitration. The plaintiff and the defendant were, at all relevant times, parties to a written collective bargaining agreement that provided for final and binding arbitration of disputes arising under the agreement. Attorney Susan E. Halperin of the state board of mediation and arbitration was appointed as the arbitrator. At the arbitration hearings, which were held on October 28, 2004, and January 28, 2005, the plaintiff submitted that Smith's dismissal was unjustified because the defendant had failed to substantiate the violence related claims of the complaining officer. The parties stipulated

---

[2] Administrative directive 2.17 provides in pertinent part: "The following behavior shall be strictly prohibited: 1. Any act that jeopardizes the security of the unit, health, safety, or welfare of the public, staff or inmates. . . . 3. Unauthorized possession of non-department issued firearms or other weapons while on duty or state property. . . . 11. Engag[ing] in unprofessional or illegal behavior, both on and off duty, that could in any manner reflect negatively on the Department of Correction."

to the following unrestricted submission:[3] "Was the dismissal of [Smith] for just cause? If not, what shall the remedy be, consistent with the NP-4 contract?" Following the hearings, the arbitrator issued an award stating: "The grievance is denied. The dismissal of [Smith] was for just cause." The arbitrator's award included the following:

"[T]he evidence is clear that something occurred between the two officers over the issue of the distribution of the union material concerning [Smith]. The fact remains that the telephone contact by [Smith] with the other officer resulted in a series of events that led to [Smith]'s subsequent arrest and dismissal. . . . [Smith] was aware of the consequences related to her conduct and had full notice of the [defendant's] rules regarding such conduct. There is no question that the rules are related to the efficient operation of the department, especially in light of its mandates and mission. Although [Smith] claims that she accepted [accelerated rehabilitation] on [the] advice of her attorney, the fact that she asked the court for and was granted accelerated rehabilitation indicates that she accepted responsibility for the charges and assumes culpability. I find that fact to be substantial evidence of her violations before this arbitration. Based on the foregoing, I find that [Smith] was terminated for just cause, and the [defendant] met its burden of proof."

On November 9, 2005, the plaintiff filed an application to vacate the arbitration award. In its application to vacate, the plaintiff offered the following reasons for vacatur: "The [arbitrator] exceeded [her] powers or so imperfectly executed them that a mutual, final and definitive award upon the subject matter was not made. . . . The arbitrator [is] guilty of misconduct by which

---

[3] In this case, the plaintiff does not dispute that the submission was unrestricted.

the rights of the [union] have been prejudiced [and] [t]he award is against public policy." Following a hearing on November 21, 2006, the court denied the plaintiff's application to vacate. In its memorandum of decision, the court stated: "This court cannot find that it was an egregious misperformance of duty in violation of General Statutes § 52-418 (a) (3) or (4). The court cannot correct errors of fact or law, substituting its judgment for the arbitrator's where the submission was unrestricted." This appeal followed.

We initially set forth the applicable standard of review. The standard of review relative to arbitration awards depends on the nature of the challenge. With a voluntary, unrestricted submission to an arbitrator, as is the case before us, the court may examine the submission and the award to determine only whether the award conforms to the submission. See *Cheverie* v. *Ashcraft & Gerel*, 65 Conn. App. 425, 430, 783 A.2d 474, cert. denied, 258 Conn. 932, 785 A.2d 228 (2001). "In making such a comparison when the submission is unrestricted, the court will not review the evidence or legal questions involved, but is bound by the arbitrator's legal and factual determinations." Id. "When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission." (Internal quotation marks omitted.) *Saturn Construction Co.* v. *Premier Roofing Co.*, 238 Conn. 293, 304, 680 A.2d 1274 (1996).[4]

"Certain conditions do exist, however, under which we conduct a more searching review of arbitral awards.

---

[4] Recognizing that arbitration awards are reviewed narrowly in other jurisdictions, our Supreme Court has noted that "[a] mistake which will vitiate or invalidate an award must be gross and manifest to the point of showing bad faith or failure to exercise honest judgment . . . ." (Citation omitted; internal quotation marks omitted.) *Garrity* v. *McCaskey*, 223 Conn. 1, 10, 612 A.2d 742 (1992), quoting *Baltimore* v. *Allied Contractors, Inc.*, 236 Md. 534, 546, 204 A.2d 546 (1964).

In *Garrity* v. *McCaskey*, 223 Conn. 1, 6, 612 A.2d 742 (1992), our Supreme Court reiterated that there are three grounds for vacating an award when the submission is unrestricted. These grounds arise when the award (1) rules on the constitutionality of a statute, (2) violates clear public policy or (3) contravenes one or more of the statutory proscriptions of General Statutes § 52-418." (Internal quotation marks omitted.) *Cheverie* v. *Ashcraft & Gerel*, supra, 65 Conn. App. 430–31. "*[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.* We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." (Emphasis added; internal quotation marks omitted.) Id., 438.

I

The plaintiff first claims that the court's denial of its application to vacate was improper because the arbitrator exceeded her authority and imperfectly executed the award in violation of § 52-418 (a) (4).[5] Specifically, the plaintiff argues that in rendering the arbitration award, the arbitrator relied on no findings of fact other

---

[5] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: (1) if the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause . . . or *(4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.*" (Emphasis added.)

than that Smith had accepted accelerated rehabilitation. According to the plaintiff, the arbitrator's impermissible reliance on Smith's acceptance of accelerated rehabilitation precluded her from making a mutual, final and definite award. We do not agree.

"In *Garrity*, [our Supreme Court] adopted the test enunciated by the United States Court of Appeals for the Second Circuit in interpreting the federal equivalent of § 52-418 (a) (4). . . . The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the [arbitrator] manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the [arbitrator] appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Internal quotation marks omitted.) *Alexson* v. *Foss*, 276 Conn. 599, 614, 887 A.2d 872 (2006).

Upon application of these principles to the case before us, we conclude that the court properly denied the application to vacate the award. The plaintiff has failed to demonstrate the first *Garrity* element, which is that the arbitrator's alleged error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. First, contrary to the plaintiff's assertions, it is not clearly an error for an arbitrator to acknowledge and to consider that a grievant has accepted accelerated rehabilitation. Our careful review of § 54-56e, the accelerated rehabilitation statute,[6] and of the relevant case law leads us to

---

[6] General Statutes § 54-56e (b) provides in relevant part: "The court may, in its discretion, invoke such program on motion of the defendant or on motion of a state's attorney or prosecuting attorney with respect to a defendant (1) who, the court believes, will probably not offend in the future, (2) who has no previous record of conviction of a crime . . . (3) who has not

conclude that an arbitrator, in rendering an arbitration award, is not prohibited from taking a grievant's acceptance of accelerated rehabilitation into account.

The plaintiff argues that because a plea of nolo contendere[7] must not be attributed any evidentiary value, neither should a party's acceptance of accelerated rehabilitation be given any meaning for purposes of an arbitration award. We find that contention to be unpersuasive in light of our Supreme Court's holding that a plea of nolo contendere may be considered as evidence in an arbitration proceeding. In *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 52, 757 A.2d 501 (2000), our Supreme Court stated: "[A]lthough our jurisprudence traditionally has imposed limitations on the collateral effects to be given, in the civil and administrative litigation contexts, to a conviction based on a nolo plea, the private nature of voluntary arbitration strongly counsels against extending those limitations to the employment sphere governed by a voluntary arbitration clause. . . . In that realm, a conviction based on a plea of nolo contendere does not, in our view, necessarily carry the same set of limitations with it." In light of the foregoing, we conclude that the arbitrator's statement about Smith's accelerated rehabilitation would not be instantly and readily perceived as an error by the average person qualified to serve as an arbitrator.[8]

---

been adjudged a youthful offender within the preceding five years . . . (4) who states under oath . . . that the defendant has never had such program invoked in the defendant's behalf . . . ."

[7] A plea of nolo contendere is a declaration by the accused that he will not contest the charge. Its inconclusive and ambiguous nature dictates that it should be given no currency beyond the particular case in which it was entered. *Lawrence* v. *Kozlowski*, 171 Conn. 705, 712 n.4, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977).

[8] Likewise, we do not conclude that the arbitrator "appreciated the existence of a clearly governing principle but decided to ignore it," which is the second prong of the *Garrity* test, or that the governing law alleged to have been ignored is "well defined, explicit, and clearly applicable," which is the third prong. *Saturn Construction Co.* v. *Premier Roofing Co.*, supra,

Moreover, contrary to the plaintiff's claim, the arbitrator clearly relied on findings other than Smith's acceptance of accelerated rehabilitation. The arbitrator explicitly referred to the fact that Smith's telephone contact with another officer led to her dismissal and that Smith "was aware of the consequences related to her conduct and had full notice of the [defendant]'s rules regarding such conduct." The arbitrator further stated: "The fact remains that the telephone contact by [Smith] with the other officer resulted in a series of events that led to [Smith's] subsequent arrest and dismissal."

Because the plaintiff has failed to demonstrate, pursuant to § 52-418 (a) (4), that the award in question manifests an egregious or patently irrational application of the law, we conclude that the arbitrator did not exceed her powers or so imperfectly execute them that a mutual, final and definite award on the subject matter submitted was not made. Accordingly, our role is confined to reviewing the court's comparison of the submission with the award. "Arbitrators are only required to render an award in conformity to the submission and an award need contain no more than the actual decision of the arbitrators. An explanation of the means by which they reached the award, unless required by the submission, is needless and superfluous." *Malecki* v. *Burnham*, 181 Conn. 211, 213, 435 A.2d 13 (1980). "As long as the arbitrator rules within the parameters of the submission and provides the parties with a fair hearing, the award will not be set aside on judicial review." *Bennett* v. *Meader*, 208 Conn. 352, 363, 545 A.2d 553 (1988).

When the parties submitted the grievance to arbitration, they delegated to the arbitrator, by the submission

238 Conn. 305. As discussed in part II, although the accelerated rehabilitation statute serves the salutary purpose of permitting persons accused of crimes to avoid convictions, there is no clear legal principle preventing arbitrators from drawing adverse inferences from the fact that someone has utilized accelerated rehabilitation.

agreement, the power to answer and award on the issue. By agreeing to an unlimited submission, the parties authorized the arbitrator to exercise her judgment and discretion in rendering the award. "[A] party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results." *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 187, 530 A.2d 171 (1987). In this case, the award properly answered the submission. We therefore conclude that the court properly denied the plaintiff's application to vacate.

## II

The plaintiff also claims that the court's denial of its application to vacate was improper because the arbitration award violated the public policy embodied by § 54-56e. Specifically, the plaintiff contends that permitting an arbitrator to draw an inference that acceptance into the pretrial program for accelerated rehabilitation constitutes guilt would have a chilling effect on the program and on the criminal justice system. We do not agree.

Review of an arbitration award on the basis of a public policy violation "require[s] a two-step analysis . . . ." *State* v. *AFSCME, Council 4, Local 2663, AFL-CIO*, 59 Conn. App. 793, 797, 758 A.2d 387, cert. denied, 255 Conn. 905, 762 A.2d 910 (2000). "First, we must determine whether a clear public policy can be identified. Second, if a clear public policy can be identified, we must then address the ultimate question of whether the award itself conforms with that policy." Id. Accordingly, we look to whether each of the defendant's public policy claims satisfies this two step analysis.

In this case, the plaintiff claims that the award violates the public policy underlying § 54-56e, the pretrial accelerated rehabilitation statute, which provides, in relevant part: "The court may, in its discretion, invoke such program on motion of the defendant or on motion

of a state's attorney or prosecuting attorney with respect to a defendant (1) who, the court believes, will probably not offend in the future, (2) who has no previous record of conviction of a crime . . . (3) who has not been adjudged a youthful offender within the preceding five years . . . (4) who states under oath . . . that the defendant has never had such program invoked in the defendant's behalf . . . ." General Statutes § 54-56e (b). In support of its argument, the plaintiff asserts that the language of § 54-56e mandates that acceptance of accelerated rehabilitation may not be equated with an admission of guilt. We must first ask whether the plaintiff has identified a clear public policy.

The plaintiff insists that § 54-56e "appears to imply that the individual [who applies for accelerated rehabilitation] may not be responsible for the charges and [may] not [be] guilty of the offense." We cannot endorse this interpretation. Our Supreme Court has described one who chooses accelerated rehabilitation as "a person who may be guilty of the offense charged but whom the legislature has declared a worthy candidate for a second chance." *State* v. *Parker*, 194 Conn. 650, 658, 485 A.2d 139 (1984). Furthermore, our review of the relevant case law produces no clear public policy prohibiting arbitrators from considering a party's acceptance of accelerated rehabilitation.

In *State* v. *Fanning*, 98 Conn. App. 111, 908 A.2d 573 (2006), cert. denied, 281 Conn. 904, 916 A.2d 46 (2007), this court defined accelerated rehabilitation as "a statutory alternative to the traditional course of prosecution available for some defendants and totally dependent upon the trial court's discretion." (Internal quotation marks omitted.) Id., 116. Additionally, "a dismissal pursuant to the Connecticut accelerated pretrial rehabilitation program is not a termination in favor of the accused for purposes of a civil rights suit." *Roesch* v. *Otarola*, 980 F.2d 850, 853 (2d Cir. 1992). In sum, "[t]he only

right that the defendant may earn under the accelerated rehabilitation statute is the right to a dismissal of the charges against him, a right that is expressly conditioned on satisfactory completion of the period of probation." *State* v. *Parker*, supra, 194 Conn. 658.

We conclude that the arbitrator's drawing an inference from Smith's acceptance of accelerated rehabilitation did not violate any clear public policy. Moreover, as noted, the arbitrator set forth an independent basis for her ruling. Consequently, we uphold the court's denial of the plaintiff's application to vacate the arbitration award.

The judgment is affirmed.

In this opinion the other judges concurred.