******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

STATE OF CONNECTICUT v. STEPHEN GUILD
(AC 43868)

Moll, Clark and DiPentima, Js.

*Syllabus*

The defendant acquittee, who previously had been found not guilty of certain crimes by reason of mental disease or defect, appealed to this court from the trial court's denial of his motion to dismiss the state's petition, filed pursuant to statute (§ 17a-593), to extend his commitment to the jurisdiction of the Psychiatric Security Review Board. On appeal, the acquittee claimed that this court had subject matter jurisdiction over his appeal because the trial court's order denying his motion satisfied at least one prong of the finality test set forth in *State* v. *Curcio* (191 Conn. 27). *Held* that the trial court's order denying the acquittee's motion to dismiss the state's petition did not satisfy either prong of *Curcio* and was not a final judgment for purposes of appeal: the order did not terminate a separate and distinct proceeding for purposes of the first prong of *Curcio* as the order involved a constitutional challenge that was inextricably intertwined with the adjudication of the petition and, as a result, the proceedings concerning that order were not wholly severable from the merits of the state's petition; moreover, the order did not result in the irreparable loss of a claimed right if immediate appellate review was not afforded, required to satisfy the second prong of *Curcio*, as the petition remained pending before the trial court, the acquittee's claimed right to discharge from the board's jurisdiction on the basis of his right to equal protection pursuant to the United States constitution was still intact and further proceedings could still affect the acquittee's claimed right; accordingly, this court lacked subject matter jurisdiction over the appeal.

Argued December 7, 2021—officially released July 26, 2022

*Procedural History*

Petition for an order extending the defendant's commitment to the Psychiatric Security Review Board, brought to the Superior Court in the judicial district of Middlesex, where the court, *Keegan, J.*, denied the defendant's motion to dismiss the petition, and the defendant appealed to this court. *Appeal dismissed.*

*Richard E. Condon, Jr.*, senior assistant public defender, for the appellant (defendant).

*Timothy F. Costello*, senior assistant state's attorney, with whom, on the brief, were *Michael A. Gailor*, state's attorney, and *Russell C. Zentner*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MOLL, J. The defendant, Stephen Guild (acquittee),[1] appeals from the judgment of the trial court denying his motion to dismiss the state's petition, filed pursuant to General Statutes § 17a-593 (c),[2] to continue his commitment to the jurisdiction of the Psychiatric Security Review Board (board) beyond his maximum term of commitment. On appeal, as a threshold matter, the acquittee claims that this court has subject matter jurisdiction over this appeal because the trial court's denial of his motion to dismiss satisfies at least one prong of the finality test set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). We conclude that the trial court's denial of the acquittee's motion to dismiss is not a final judgment for appeal purposes under either prong of *Curcio* and, accordingly, dismiss the acquittee's appeal for lack of subject matter jurisdiction.[3]

The following facts, as recited by the trial court, and procedural history are relevant to our resolution of this appeal. On October 9, 1997, the acquittee, who was angry because he believed that his father had sexually abused him, attacked his father with a folding knife and a sword, causing critical physical injuries. The acquittee was subsequently charged with attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a and assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[4] He was acquitted of these charges as a result of mental disease or defect and, on March 5, 1999, was committed to the jurisdiction of the board for a period not to exceed twenty years, i.e., March 5, 2019. Notably, the acquittee was granted conditional release on June 17, 2016, and subsequently discharged from Connecticut Valley Hospital on conditional release on September 13, 2016.

On November 23, 2018, the state petitioned the court for an order of continued commitment pursuant to § 17a-593 (c) (petition) on the ground that the acquittee remains a person with psychiatric disabilities to the extent that his discharge at the expiration of his maximum term of commitment would constitute a danger to himself or others.[5] On November 29, 2018, the court, *Keegan*, *J.*, ordered that the petition be forwarded to the board for a report to be filed with the court in accordance with § 17a-593 (d).[6] On or about February 14, 2019, the board submitted its report on the petition, recommending that the court grant the petition for a period not to exceed three years.

On March 5, 2019, the acquittee filed a motion to dismiss the petition and a memorandum of law in support of that motion on the basis that his continued commitment to the board pursuant to § 17a-593 (c), as applied to him, violates his rights under the equal protection clause of the fourteenth amendment to the

United States constitution. See footnote 3 of this opinion. On June 20, 2019, the court heard oral argument on the acquittee's motion to dismiss. Thereafter, both parties filed posthearing briefs.

On December 2, 2019, the court issued a corrected revised memorandum of decision, dated November 26, 2019, denying the acquittee's motion to dismiss.[7] In its decision, the court concluded that § 17a-593, as applied to the acquittee, did not violate his right to equal protection under the fourteenth amendment to the United States constitution. This appeal followed.[8]

On appeal, as a threshold matter, the acquittee claims that we have subject matter jurisdiction over this appeal because the court's denial of his motion to dismiss satisfies at least one prong of the finality test set forth in *State* v. *Curcio*, supra, 191 Conn. 31. The state argues that neither prong of *Curcio* is satisfied, and, therefore, we lack subject matter jurisdiction over this appeal. We agree with the state.

We begin by setting forth the relevant standard of review and principles of law. "The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law [over which we exercise plenary review]." (Internal quotation marks omitted.) *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 651–52, 954 A.2d 816 (2008).

"[T]here is no constitutional right to an appeal." *Palmer* v. *Friendly Ice Cream Corp.*, 285 Conn. 462, 466, 940 A.2d 742 (2008). "The legislature has enacted General Statutes § 52-263,[9] which limits the right of appeal to those appeals filed by aggrieved parties on issues of law from final judgments. Unless a specific right to appeal otherwise has been provided by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Footnote in original; internal quotation marks omitted.) Id., 466–67; see also *State* v. *Bemer*, 339 Conn. 528, 536–37, 262 A.3d 1 (2021) ("[B]ecause our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim . . . . It is well established that [t]he principal statutory prerequisite to invoking our jurisdiction is that the ruling from which an appeal is sought must constitute a final judgment." (Internal quotation marks omitted.)).

As a general matter, "the denial of a motion to dismiss is an interlocutory ruling and, therefore, is not a final judgment for purposes of appeal." (Internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 645 n.5, 974 A.2d 669 (2009). In *State* v. *Curcio*, supra, 191 Conn. 27, our Supreme Court articulated the following

rule: "In both criminal and civil cases . . . we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. "Unless the appeal is authorized under the *Curcio* criteria, absence of a final judgment is a jurisdictional defect that [necessarily] results in a dismissal of the appeal." (Internal quotation marks omitted.) *State* v. *Fielding*, 296 Conn. 26, 38, 994 A.2d 96 (2010). We address the applicability of each *Curcio* prong in turn.

I

The acquittee argues that the court's denial of his motion to dismiss is immediately appealable under *Curcio*'s first prong because, "[i]ndisputably, the proceedings on [his] motion to dismiss, predicated upon his equal protection as applied claim to § 17a-593 (c), [are] separate and distinct, in form and substance, from a continued commitment proceeding on the merits." This argument fails.

"The first prong of the *Curcio* test . . . requires that the order being appealed from be severable from the central cause of action so that the main action can proceed independent of the ancillary proceeding. . . . If the interlocutory ruling is merely a step along the road to final judgment then it does not satisfy the first prong of *Curcio*. . . . Obviously a ruling affecting the merits of the controversy would not pass the first part of the *Curcio* test. The fact, however, that the interlocutory ruling does not implicate the merits of the principal issue at the trial . . . does not necessarily render that ruling appealable. It must appear that the interlocutory ruling will not impact directly on any aspect of the [action]." (Internal quotation marks omitted.) *Abreu* v. *Leone*, 291 Conn. 332, 339, 968 A.2d 385 (2009); see also *State* v. *Bemer*, supra, 339 Conn. 537. "The question to be asked is whether the main action could proceed independent of the ancillary proceeding." *State* v. *Parker*, 194 Conn. 650, 654, 485 A.2d 139 (1984).

Here, it is evident that the order at issue did not, under *Curcio*'s first prong, terminate a proceeding separate and distinct from the continued commitment proceedings in that such order involves a constitutional challenge that is inextricably intertwined with the adjudication of the state's petition. As a result, the proceedings concerning that order were not wholly severable from the proceedings relating to the merits of the state's petition, as evidenced by the fact that those proceedings could not advance and have not advanced during this appeal. See *State* v. *Bemer*, supra, 339 Conn. 537–38; *Abreu* v. *Leone*, supra, 291 Conn. 339; *State* v. *Parker*,

supra, 194 Conn. 654. Because the order denying the acquittee's motion to dismiss was "merely a step along the road to final judgment"; (internal quotation marks omitted) *Abreu* v. *Leone*, supra, 339; it does not constitute a final judgment for appeal purposes under the first *Curcio* prong and is not the proper subject of this appeal. See *State* v. *Parker*, supra, 653 ("[o]bviously a ruling affecting the merits of the controversy would not pass the first part of the *Curcio* test").

In sum, on the basis of the foregoing, we conclude that the court's order denying the acquittee's motion to dismiss the petition did not terminate a separate and distinct proceeding for purposes of the first prong of *Curcio*.

## II

The acquittee also argues that the court's denial of his motion to dismiss is immediately appealable under *Curcio*'s second prong, i.e., the order results in the irreparable loss of a claimed right if immediate appellate review is not afforded. See *State* v. *Curcio*, supra, 191 Conn. 31. In support of this argument, the acquittee contends that he has "raised a colorable claim that continued commitment under § 17a-593 (c) is unconstitutional as applied to his circumstances. . . . As a matter of state law, [he] is entitled to immediate discharge at the expiration of his maximum term of commitment, absent continued commitment under § 17a-593 (c)." (Citation omitted.) We conclude that the second *Curcio* prong does not apply.

"The second prong of the *Curcio* test . . . permits an appeal if the decision so concludes the rights of the parties that further proceedings cannot affect them. . . . That prong focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . One must make at least a colorable claim that some recognized statutory or constitutional right is at risk. . . . In other words, the [appellant] must do more than show that the trial court's decision threatens him with irreparable harm. The [appellant] must show that that decision threatens to abrogate a right that he or she then holds. . . . The right itself must exist independently of the order from which the appeal is taken. . . .

"The key to appellate jurisdiction under the second prong of *Curcio* is not so much that the right is already secured to the party; indeed, what is at issue in an appeal is the effect of the challenged order on the scope of the claimed right at issue. Rather, the second prong of *Curcio* boils down to whether, as a practical and policy matter, not allowing an immediate appeal will

create irreparable harm insofar as allowing the litigation to proceed before the trial court will—in and of itself—function to deprive a party of that right." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Halladay* v. *Commissioner of Correction*, 340 Conn. 52, 62–63, 262 A.3d 823 (2021).

We are mindful that our Supreme Court "previously has determined that, under the second prong of [*Curcio*], a colorable claim to a right to be free from an action is protected from the immediate and irrevocable loss that would be occasioned by having to defend an action through the availability of an immediate interlocutory appeal from the denial of a motion to dismiss. . . . The rationale for immediate appellate review is that the essence of the protection of immunity from suit is an entitlement not to stand trial or face the other burdens of litigation. . . . The second prong of *Curcio* has been deemed satisfied under this rationale for actions that are claimed to violate: sovereign immunity . . . immunity for statements made in judicial and quasi–judicial proceedings . . . statutory immunity . . . the prohibition against double jeopardy . . . and res judicata." (Citations omitted; internal quotation marks omitted.) *Blakely* v. *Danbury Hospital*, 323 Conn. 741, 746–47, 150 A.3d 1109 (2016). None of those grounds is implicated in the present case.

Here, for purposes of *Curcio*'s second prong, the acquittee's claimed right is the right to discharge from the board's jurisdiction based on his equal protection claim described in footnote 3 of this opinion. We cannot conclude, notwithstanding the acquittee's arguments to the contrary, that such claimed right includes the right to avoid a continued commitment proceeding pursuant to § 17a-593 (c). Rather, the claim raises arguments as to why the petition should be denied on the merits. Unlike, for example, a sovereign's right to be immune from suit or a criminal defendant's right against double jeopardy, the claimed right at issue here will not be "irretrievably lost" if interlocutory appellate review of the court's order on the acquittee's motion to dismiss is denied. *State* v. *Coleman*, 202 Conn. 86, 92, 519 A.2d 1201 (1987). The petition remains pending before the court,[10] and, as the state correctly points out in its appellate brief, "the trial court may yet deny the state's pending petition for continued commitment. If the court denies the petition, the acquittee would be discharged from the [board's] jurisdiction." See also *State* v. *Coleman*, supra, 86, 91. The acquittee's claimed right is "still intact and may be enforced on trial or on appeal from a final judgment." Id., 91. Accordingly, further proceedings still can affect the acquittee's claimed right and, therefore, the second *Curcio* prong is not satisfied. See id., 91–92 (denial of motion to dismiss based on statute of limitations affirmative defense did not satisfy *Curcio*'s second prong); see also *State* v. *Ahern*, 42 Conn. App. 144, 146–47, 678 A.2d 975 (1996) (denial of motion

to dismiss based on right to speedy trial and due process of law did not satisfy *Curcio*'s second prong).

In sum, because the court's denial of the acquittee's motion to dismiss the petition does not satisfy either prong of *Curcio*, it is not a final judgment for purposes of appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] Because the defendant was found not guilty by reason of mental disease or defect pursuant to General Statutes § 53a-13 in the underlying criminal proceedings, he is an "[a]cquittee," as that term is defined in General Statutes § 17a-580 (1).

[2] General Statutes § 17a-593 (c) provides: "If reasonable cause exists to believe that the acquittee remains a person with psychiatric disabilities or a person with intellectual disability to the extent that his discharge at the expiration of his maximum term of commitment would constitute a danger to himself or others, the state's attorney, at least one hundred thirty-five days prior to such expiration, may petition the court for an order of continued commitment of the acquittee."

[3] The acquittee claims on the merits that, in denying his motion to dismiss, the court improperly rejected his claim that § 17a-593, as applied to him, violates his rights under the equal protection clause of the fourteenth amendment to the United States constitution. The acquittee's equal protection claim is twofold. First, he argues that the continued commitment procedures set forth in § 17a-593 (c), as interpreted in *State* v. *Metz*, 230 Conn. 400, 645 A.2d 965 (1994), and related statutes and regulations, do not afford him the substantive rights and due process protections otherwise provided by the civil commitment procedures contained in General Statutes § 17a-495 et seq. and General Statutes § 17a-508, consistent with the requirements of equal protection. In outlining this distinction, the acquittee contends that the state should have to prove that *Metz* acquittees are more dangerous than the similarly situated class of civilly committed inmates. Second, he argues that his continued commitment under the jurisdiction of the board beyond his maximum term of commitment subjects him to legal processes, criminal penalties, and other restrictions on his liberty interests inconsistent with the requirements of equal protection. In light of our conclusion that we lack subject matter jurisdiction to entertain this appeal, we do not address this claim.

[4] In its corrected revised memorandum of decision, the court explained that the acquittee was "acquitted due to mental disease or defect of the charges of attempted murder pursuant to General Statutes §§ 53a-48 and 53a-54a, and assault in the second degree, pursuant to General Statutes § 53a-60." It is not clear why the court referenced §§ 53a-48 and 53a-60. The trial court file, as well as the parties' briefs, reflect that the acquittee was charged with attempt to commit murder in violation of §§ 53a-49 and 53a-54a and assault in the first degree in violation of § 53a-59 (a) (1).

[5] While the petition was pending, the acquittee filed several motions to extend the acquittee's commitment to the board's jurisdiction, by agreement, pending the completion and eventual adjudication of his motion to dismiss, and the court granted those requests. Most recently, on September 28, 2021, by agreement of the parties, the court again extended the acquittee's commitment for a period of time not to exceed March 20, 2023.

[6] General Statutes § 17a-593 (d) provides: "The court shall forward any application for discharge received from the acquittee and any petition for continued commitment of the acquittee to the board. The board shall, within ninety days of its receipt of the application or petition, file a report with the court, and send a copy thereof to the state's attorney and counsel for the acquittee, setting forth its findings and conclusions as to whether the acquittee is a person who should be discharged. The board may hold a hearing or take other action appropriate to assist it in preparing its report."

[7] On October 18, 2019, the court issued its original memorandum of decision in which it denied the acquittee's motion to dismiss and also granted the petition, ordering the acquittee's continued commitment not to exceed three years. On October 31, 2019, the acquittee filed a motion to correct the original memorandum of decision, requesting that the court issue a memorandum of decision addressed solely to the merits of the motion to dismiss. Ultimately, on December 2, 2019, the court issued a corrected

revised memorandum of decision denying the acquittee's motion to dismiss.

[8] On May 12, 2021, while this appeal was pending, the state filed a revised petition for an order of continued commitment pursuant to § 17a-593 (c) (revised petition), and the acquittee filed a motion to dismiss the revised petition. On September 28, 2021, the court granted a motion filed by the acquittee and joined by the state, requesting that the court "take no action" on the revised petition and the filings related to the revised petition, with both parties reserving "their right to pursue said [filings] if and when appropriate." Both the revised petition and the acquittee's motion to dismiss the revised petition remain pending.

[9] "General Statutes § 52-263 provides in relevant part: 'Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge . . . .'" *Palmer* v. *Friendly Ice Cream Corp.*, supra, 285 Conn. 466 n.5.

[10] See footnote 7 of this opinion.

---