## STATE OF CONNECTICUT *v.* CHESTER EUGENE TUCKER
## (14265)

PETERS, C. J., SHEA, GLASS, COVELLO and BORDEN, Js.

Argued June 4—decision released July 30, 1991

*Leah A. Hawley,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *Warren Murray* and *Robert Hall,* assistant state's attorneys, for the appellant (state).

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellee (defendant).

GLASS, J. This is the state's appeal from the trial court's orders granting the application of the defendant, Chester Eugene Tucker, for accelerated rehabilitation (AR) pursuant to General Statutes § 54-56e,[1] and

---

[1] "[General Statutes] Sec. 54-56e. (Formerly Sec. 54-76p). ACCELERATED PRETRIAL REHABILITATION. There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime or a motor vehicle violation for which a sentence to a term of imprisonment may be imposed, which crime or violation is not of a serious nature. The court may, in its discretion, invoke such program on motion of the defendant or on motion of a state's attorney or prosecuting attorney with respect to an accused who, the court believes, will probably not offend in the future and who has no previous record of conviction of a crime or of a violation of section 14-196, subsection (c) of section 14-215, section 14-222a, subsection (a) of section 14-224 or section 14-227a and who states under oath in open court under the penalties of perjury that he has never had such program invoked in his behalf, provided the defendant shall agree thereto and provided notice has been given by the accused, on a form approved by rule of court, to the victim or victims of such crime or motor vehicle violation, if any, by registered or certified mail and such victim or victims have an opportunity to be heard thereon. Any defendant who makes application for participation in such program shall pay to the court an application fee of twenty-five dollars. This section shall not be applicable to any person charged with a violation of section 14-227a, 53a-56b or 53a-60d, or to any person accused of a family violence crime as defined in section 46b-38a who (1) is eligible for the pretrial family violence education program established under section 46b-38c, or (2) has previously had the pretrial family violence education program invoked in his behalf. Unless good cause is shown, this section shall not be applicable to persons accused of a class A, class B, or class C felony or to any youth who has previously been adjudged a youthful offender under the provisions of sections 54-76b to 54-76n, inclusive. Any defendant who enters such program shall pay to the court a participation fee of one hundred dollars. Any defendant who enters such program shall agree to the tolling of any statute of limitations with respect to such crime

thereafter dismissing the criminal charge that the state had lodged against him. We conclude that under the unique circumstances of this case, neither of the court's orders were so unreasonable as to constitute an abuse of discretion. Accordingly, we affirm.

The material facts are undisputed. On May 1, 1990, the defendant was arrested and charged with the crime of sale of narcotics in violation of General Statutes § 21a-278 (b).[2] The defendant subsequently filed an

and to a waiver of his right to a speedy trial. Any such defendant shall appear in court and shall be released to the custody of the office of adult probation for such period, not exceeding two years, and under such conditions as the court shall order. If the defendant refuses to accept, or, having accepted, violates such conditions, his case shall be brought to trial. If such defendant satisfactorily completes his period of probation, he may apply for dismissal of the charges against him and the court, on finding such satisfactory completion, shall dismiss such charges. If the defendant does not apply for dismissal of the charges against him after satisfactorily completing his period of probation, the court, upon receipt of a report submitted by the office of adult probation that the defendant satisfactorily completed his period of probation, may on its own motion make a finding of such satisfactory completion and dismiss such charges. Upon dismissal, all records of such charges shall be erased pursuant to section 54-142a. An order of the court denying a motion to dismiss the charges against a defendant who has completed his period of probation or terminating the participation of a defendant in such program shall be a final judgment for purposes of appeal."

[2] General Statutes § 21a-278 provides in pertinent part: "(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

application for AR pursuant to § 54-56e. At the July 13, 1990 hearing on the application, the state described the circumstances attendant to the alleged crime, and defense counsel notified the court that approximately two weeks prior to his arrest, the defendant had enlisted in the United States Navy. The court, over the state's objection, granted the defendant's application and imposed a two year period of probation. After defense counsel explained that the Navy would not accept a recruit on probation, the court further ordered the defendant's probation specially conditioned upon his appearance in court with his Navy recruiter five days later, ready to enter the Navy. The court notified the parties that it would at that time entertain a motion to dismiss the charge against the defendant if he complied with the special condition.

At the July 18, 1990 hearing, the defendant appeared in court with his recruiter, ready, as both he and his recruiter informed the court, to enter the Navy. When the recruiter declared that the Navy would reject the defendant if the dismissal of the charge were conditioned upon his entering the Navy, the court explained that the special condition of the defendant's probation was that he appear in court, with his recruiter, ready to enter the Navy. The court then found that the defendant had complied with the special condition and dismissed the charge. On July 27, 1990, the defendant entered the Navy. The defendant was on active duty in the Middle East on the USS Guadalcanal at the time of oral argument in this case.

On the date of the dismissal of the charge against the defendant, the state moved for permission to appeal pursuant to General Statutes § 54-96.[3] The trial court

---

[3] "[General Statutes] Sec. 54-96. APPEALS BY THE STATE FROM SUPERIOR COURT IN CRIMINAL CASES. Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases,

granted the motion on July 27, 1990, and the state appealed to the Appellate Court on August 8, 1990. We transferred the appeal to this court in accordance with Practice Book § 4023.

On appeal, the state attacks the trial court's orders: (1) granting the defendant's application for AR; and (2) dismissing the charge against him.[4]

I

In connection with its claim that the court should not have granted the defendant's application for AR, the state advances two alternative contentions, each grounded on the following language of § 54-56e[5]: "There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime . . . *not of a serious nature.*" (Emphasis added.) The state initially contends that because § 21a-278 (b),[6] subject to certain exceptions inapplicable here, mandates the imposition

may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

[4] The defendant argues that this court lacks jurisdiction over the state's appeal because the appeal was untimely under Practice Book § 4009. Prior to the transfer of the appeal, the defendant raised the identical jurisdictional issue in support of a motion to dismiss the state's appeal in the Appellate Court. The Appellate Court resolved the issue against the defendant in *State* v. *Tucker,* 23 Conn. App. 559, 583 A.2d 139 (1990). Because we agree with both the reasoning of and the result reached by the Appellate Court, we also decide the defendant's jurisdictional issue against him. The defendant further contends that in view of the trial court's determination, in connection with its consideration of the state's motion for permission to appeal, that the state failed to preserve these claims, we should not review the state's claims that: (1) a defendant charged with the crime of sale of narcotics in violation of General Statutes § 21a-278 *per se* is ineligible for AR under General Statutes § 54-56e; and (2) the trial court improperly dismissed the charge against the defendant before he had completed his two year period of probation. Since our review of the record discloses that the state sufficiently articulated these claims at trial, we review them.

[5] See footnote 1, supra.

[6] See footnote 2, supra.

of a nonsuspendable minimum sentence upon a defend-
ant convicted under the statute, the unclassified felony
of sale of narcotics is *per se* a crime "of a serious
nature" within the meaning of § 54-56e, and therefore,
that the legislature intended that a defendant charged
with this crime be denied eligibility for AR. Alterna-
tively, the state contends that a defendant accused of
violating § 21a-278 (b) is automatically ineligible for AR
unless the defendant sustains what the state considers
a statutorily mandated burden to demonstrate that the
crime, in light of its surrounding circumstances, was
not "of a serious nature." General Statutes § 54-56e.
We are not persuaded by either of the state's conten-
tions.

While the nonsuspendable mandatory minimum sen-
tence that may be imposed upon a defendant convicted
under § 21a-278 (b) may indicate that the legislature
considered the sale of narcotics a serious offense,
§ 54-56e itself is wholly devoid of any language sug-
gesting that the legislature intended that such a defend-
ant be *per se* denied the opportunity to apply for AR.
Furthermore, § 54-56e specifically provides that "[t]his
section shall not be applicable to any person charged with
a violation of section 14-227a, 53a-56b or 53a-60d, or to
any person accused of a family violence crime as defined
in section 46b-38a who (1) is eligible for the pretrial family
violence education program established under section
46b-38c, or (2) has previously had the pretrial family
violence education program invoked in his behalf." We
infer from the express designation of the offenses to
which § 54-56e does not apply that the legislature
intended only defendants charged with the designated
offenses to be excluded, *per se,* from the application
of the statute. See *White Oak Corporation* v. *Depart-
ment of Transportation,* 217 Conn. 281, 301, 585 A.2d
1199 (1991) (expressio unius est exclusio alterius). In

view of the absence of a specific legislative directive to the contrary, therefore, we conclude that a defendant charged with the sale of narcotics under § 21a-278 (b) is not *per se* ineligible for AR under § 54-56e.[7]

As for the state's claim that the phrase "not of a serious nature" in § 54-56e renders the AR provisions inapplicable to a defendant charged with the unclassified felony of sale of narcotics under § 21a-278 (b) unless the defendant demonstrates that the circumstances attendant to the crime were not of a serious nature, we reject the claim due to the irrational result that would follow from an adoption of the state's construction of § 54-56e. In addition to the "not of a serious nature" language upon which the state isolatedly focuses, § 54-56e provides in pertinent part: "Unless good cause is shown, this section shall not be applicable to persons accused of a class A, class B, or class C felony . . . ." This provision logically implies its converse, that is, § 54-56e *shall* apply to alleged class A, B, or C felony offenders upon a showing of "good cause." If a showing of "good cause" is sufficient to secure the application of § 54-56e to a defendant accused of a class A felony, it would hardly be rational, considering our felony classification and sentencing scheme, to hold a defendant charged with the unclassified felony of sale of narcotics to any other test. The purpose underlying the felony sentencing scheme

---

[7] The state directs our attention to the following remark made on the floor of the House of Representatives during the debate concerning the nonsuspendable mandatory minimum sentence now authorized under General Statutes § 21a-278 (b): "The man or woman [who is] on the street selling for profit, with no addiction, that person doesn't need any understanding. He needs to go to jail . . . ." 17 H.R. Proc., Pt. 6, 1974 Sess., p. 3184. If the legislature as a collective body were to share the view of this particular representative, it certainly would be empowered expressly to exclude defendants charged with sale of narcotics under § 21a-278 (b) from the application of General Statutes § 54-56e.

embodied in General Statutes § 53a-35, which is substantially similar to that of General Statutes § 53a-35a, was "to eliminate the kind of irrationally disparate sentences which often existed in prior law between essentially similarly serious crimes, and irrationally similar sentences between crimes of greatly varying seriousness, and to substitute therefor a system which will, as nearly as possible, treat essentially the same similarly serious kinds of conduct." Commentary, Commission to Revise the Criminal Statutes (1969) pp. 9-10. Consequently, the prime index of the gravity of a particular crime is the length of the statutorily authorized prison term that a defendant convicted of the crime may be required to serve.

Under § 53a-35a (2), a defendant convicted of the class A felony of murder may be sentenced to a maximum term of "life imprisonment," defined in pertinent part by General Statutes § 53a-35b as "a definite sentence of sixty years . . . ." The maximum prison sentence authorized under § 21a-278 (b), by comparison, is twenty years, the same maximum sentence that can be imposed upon a defendant convicted of a class B felony. See General Statutes § 53a-35a (4). From the disparity between these maximum sentences, it is evident that the legislature viewed the act criminalized under § 21a-278 (b) to be as serious as the various acts punishable as class B felonies, and to be less serious than the act of murder punishable as a class A felony. An endorsement of the state's interpretation of § 54-56e would therefore replicate in the AR context the "irrationally disparate" treatment of "similarly serious kinds of conduct" that the legislature sought to eliminate by streamlining the felony classification and sentencing scheme. Commentary, Commission to Revise the Criminal Statutes, supra. Our duty to reconcile the separate parts of a statute as far as possible; *Statewide Griev-*

*ance Committee* v. *Rozbicki,* 211 Conn. 232, 241, 558 A.2d 986 (1989); and to construe statutes in a manner that produces an overall reasonable interpretation; *Kaeser* v. *Zoning Board of Appeals,* 218 Conn. 438, 443, 589 A.2d 1229 (1991); requires that we reject the state's proposed interpretation of § 54-56e. We accordingly conclude that a defendant charged with the crime of sale of narcotics under § 21a-278 (b), an unclassified felony necessarily of a less "serious nature" than the class A felony of murder, need not demonstrate anything other than "good cause" in order to fall within the application of § 54-56e.[8] In determining whether "good cause" has been satisfactorily shown, a court appropriately may consider the circumstances surrounding the particular crime with which the applicant has been charged.

---

[8] The legislative history of General Statutes § 54-56e supports our construction of the statute. In 1973, the legislature enacted No. 73-641 of the 1973 Public Acts (the 1973 act), the first precursor to § 54-56e. The 1973 act provided in pertinent part: "There shall be a pre-trial program for accelerated rehabilitation of persons accused of a crime, not of a serious nature. This act shall not [apply] to persons accused of a class A, class B, or class C felony." In 1974, the legislature enacted No. 74-38 of the 1974 Public Acts (the 1974 act), which deleted the provision disqualifying alleged class A, B and C felony offenders outright, and substituted the following provision that currently remains unchanged in § 54-56e: "unless good cause is shown, this act shall not be applicable to persons accused of a class A, class B, or class C felony." While the 1974 act did not specify the conditions under which it would apply to defendants accused of crimes other than class A, B and C felonies, Representative James F. Bingham, now Judge Bingham of the Superior Court, a proponent of the draft version of the 1974 act, Substitute House Bill 5481, explained during a debate on the floor of the House of Representatives: "In the last session we passed [the 1973 act] which permitted the diversion of certain people away from the Court system into probation . . . . *[A]lthough [the 1973 act] excluded . . . Class A, B, or C felonies, we have provided [in this bill that] if there is good cause shown that any crime in the State of Connecticut might be susceptible to this diversionary treatment.*" (Emphasis added.) 17 H.R. Proc., Pt. 2, 1974 Sess., p. 627. Although ordinarily not decisive respecting questions of statutory interpretation, "statements made

Turning to the circumstances of the present case, we are unpersuaded by the state's contention that the court abused its discretion in determining that "good cause" warranted the granting of the defendant's application for AR. The defendant was a first time offender, and no evidence before the court suggested that his alleged sale of narcotics had been accompanied by violence or had resulted in harm to another. As for the defendant's personal potential for rehabilitation, the court could reasonably have inferred from his voluntary act of enlisting in the Navy some two weeks *before* his arrest that he would not resist supervisory authority, and that diversionary measures would be likely to ensure that he would not offend again. The possibility that the defendant might have been destined for the supervision of the Navy, rather than the office of adult probation (OAP), does not, as the state claims, render the granting of the defendant's application an abuse of discretion. The court was not required to ignore the practical reality that the Navy possessed the resources and personnel necessary to control the defendant's environment and behavior to a degree that the OAP could not match. In these circumstances, we cannot say that the court abused its broad discretion in granting the defendant's application for AR.

## II

The state next claims that the court, by dismissing the charge against the defendant after the passage of five days of his two year period of probation, contravened the following provision in § 54-56e: "If such defendant satisfactorily completes his period of probation, he may apply for dismissal of the charges against him and the court, on finding such satisfactory com-

on the floor of the legislature . . . are strong indications of legislative intent." *Winchester Woods Associates* v. *Planning & Zoning Commission*, 219 Conn. 303, 310–11, 592 A.2d 953 (1991).

pletion, shall dismiss such charges." Notwithstanding the fact that the court did not explicitly refer to this provision at the dismissal hearing, we presume that the court was aware of it, as well as its statutory authority under General Statutes § 53a-33,[9] to terminate the defendant's probation "at any time" for "good cause" shown. We therefore treat the court's dismissal of the charge as accompanied by an implicit finding of good cause for a termination of the defendant's probation, necessarily resulting in his completion of the modified period of probation and warranting dismissal of the charge under § 54-56e. In accordance with § 53a-33, our standard of review is whether the effective termination of the defendant's probation constituted an abuse of discretion.[10]

Irrespective of the fact that the defendant actually entered the Navy, the state attributes an abuse of discretion to the court's alleged failure to appreciate the risk existing at the time of termination that the defendant, once his probation had been terminated and the charge against him dismissed, might have refused to enter the Navy. The circumstances before the court, however, provided sufficient objective support for a reasonable determination that the risk of such a refusal was minimal.

[9] "[General Statutes] Sec. 53a-33. TERMINATION. The court or sentencing judge may at any time during the period of probation or conditional discharge, after hearing and for good cause shown, terminate probation or conditional discharge."

[10] As for the state's challenge to the court's failure to conduct a hearing on "good cause" pursuant to General Statutes § 53a-33, we fail to see how the state was prejudiced by this omission. Both parties were before the court at the time that it effectively terminated the defendant's probation, and the court "heard" both parties' respective arguments concerning the possible disposition of the matter. The state does not claim that it was precluded from fully voicing its objections to the course of action taken, nor does the state claim that it would have voiced any additional objection if the court had conducted a termination hearing temporally distinct from the hearing held.

Under oath and subject to the penalties of perjury, the defendant represented to the court that he intended to enter the Navy if permitted to do so. The fact that the defendant voluntarily had enlisted in the Navy before his arrest lent credence to this representation, as did the recruiter's statement that the defendant successfully had completed two training programs available to potential recruits. In addition, the recruiter substantiated the defendant's representation by informing the court that the defendant had been scheduled for imminent departure to boot camp. Considering the objective indications supporting the defendant's stated intention to carry out his previously devised plan to enter the Navy, the court could reasonably have concluded that there was little chance that he would refuse to do so.

Finally, we do not agree with the state that the termination of the defendant's probation and the concomitant dismissal of the charge against him disserved the overarching rehabilitative purpose of our probation system. The court's order enabled the defendant to implement what in effect was a self-imposed four year rehabilitative plan of service to this country, and therefore to this state, under the rigid supervision of the United States Navy. As the defendant's recruiter informed the court, the Navy not only offered the defendant a strictly maintained drug free atmosphere, but also an opportunity for vocational training as a field engineer. In these circumstances, the court's action, which permitted the defendant to exercise these suitable opportunities for rehabilitation and reform without jeopardizing the public interest, did not undermine the rehabilitative objective that our probation system is designed to achieve.

The judgment is affirmed.

In this opinion the other justices concurred.