******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JUSTIN T. KEVALIS
(SC 19120)

Rogers, C. J., and Palmer, Zarella, McDonald and Espinosa, Js.

*Argued December 2, 2013—officially released September 23, 2014*

*Patrick D. Skuret*, with whom was *Daniel D. Skuret*, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Michael A. DeJoseph*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. The issue that we are called upon to decide in this appeal is whether a trial court has discretion to make a finding of satisfactory completion of the accelerated rehabilitation program (program) when the defendant has been convicted of a crime during his participation in the program, but the conduct forming the basis of the conviction occurred before the defendant was granted entry into the program. The defendant, Justin T. Kevalis, was charged with, inter alia, interfering with an officer in violation of General Statutes § 53a-167a. In connection with that charge, the defendant applied for, and was accepted into, the program pursuant to General Statutes (Supp. 2014) § 54-56e.[1] Following the expiration of his probationary period in the program, the defendant filed a motion to dismiss the charge of interfering with an officer. The trial court denied the motion after finding that the defendant failed to satisfactorily complete the program because he had been convicted of several unrelated crimes while participating in the program. Pursuant to § 54-56e (f), the defendant appealed from the denial of his motion to dismiss,[2] arguing that the law governing violations of postconviction probation applied to accelerated rehabilitation probation and, thus, the trial court did not have the discretion to consider the convictions in its finding because the conduct that formed the basis of the convictions occurred before he entered the program. The state argued that the trial court correctly denied the defendant's motion because convictions obtained during accelerated rehabilitation probation violate the purpose of the accelerated rehabilitation statute. We agree with the state, and conclude that because the purpose of the accelerated rehabilitation statute is to grant onetime offenders an opportunity to maintain a clean criminal record, a conviction obtained while participating in the program violates the purpose of § 54-56e and requires a finding of unsatisfactory completion. Accordingly, we affirm the judgment of the trial court.

The record reveals the following undisputed facts. On April 4, 2009, the defendant was arrested in Bridgeport and charged with one count of failure to keep a narcotic drug in the original container in violation of General Statutes § 21a-257, one count of interfering with an officer in violation of § 53a-167a, and one count of possession of narcotics in violation of General Statutes § 21a-279 (a). On July 29, 2009, he applied for the program with respect to the charge of interfering with an officer. After the requisite canvass of the defendant, the court accepted the application and continued the case until August 27, 2009, in order for an investigation to be conducted of the defendant's eligibility for the program.

While his application for accelerated rehabilitation

was pending, the defendant was arrested in Newington on August 4, 2009, and charged with one count of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes (Rev. to 2009) § 14-227a and one count of possession of narcotics in violation of § 21a-279 (a). On August 19, 2009, in Bridgeport, the defendant again was arrested and charged with a violation of General Statutes (Rev. to 2009) § 14-227a. He entered inpatient treatment at the detoxification unit at South Central Rehabilitation Center on August 25, 2009. Consequently, because of his inpatient status, the August 27, 2009 hearing on his accelerated rehabilitation application was continued. In September, 2009, the defendant was arrested in Massachusetts for assault. The eligibility hearing was continued several times, and, on November 12, 2009, the case again was continued because the defendant was receiving treatment at an inpatient facility.[3]

The eligibility hearing on the defendant's application for accelerated rehabilitation was held on January 8, 2010. After the trial court received the eligibility report from the Department of Probation, it addressed the disposition of the defendant's two narcotics charges pending before the court, noting: "[T]he other charges that are not eligible to be considered for [accelerated rehabilitation] are the narcotic[s] charges. They're going to be held in abeyance and if [the defendant] successfully complete[s] the [program], if I grant it, they'll be nolled at that time and, of course, if he is not successful, he'll face those charges again." The state then recited the factual basis for the defendant's arrest. Defense counsel asked that the application be granted, arguing that the defendant had been "inpatient in regards to drugs and alcohol. He just was actually released today in regards to a psychiatric inpatient, involuntary inpatient that he was in today . . . ." After finding that the crime was not of a serious nature and that the defendant was not likely to offend in the future, the trial court granted the defendant's application for accelerated rehabilitation, set a condition of substance abuse evaluation and treatment, if necessary, and continued the case until January 9, 2012.

On April 27, 2010, while he was on accelerated rehabilitation probation, the defendant pleaded guilty to the August 4, 2009 charge of operating a motor vehicle while under the influence of intoxicating liquor or drugs and the charge for possession of narcotics. For the charge of operating a motor vehicle while under the influence, he was sentenced to six months of incarceration, execution suspended, and eighteen months of probation. He received one year of incarceration, execution suspended, and one year of probation for the charge of possession of narcotics. On April 30, 2010, the defendant pleaded guilty to the August 19, 2009 charge of operating a motor vehicle while under the influence,

as a double first time offender, and was sentenced to six months of incarceration, execution suspended, and eighteen months of probation. In 2011, the defendant pleaded guilty to the assault charge in a Massachusetts court.

On January 9, 2012, the defendant returned to court in Bridgeport and moved for a dismissal of the charge of interfering with an officer. The state objected, and moved for a finding of unsuccessful completion of the program. The state argued that when a defendant is convicted of a crime while participating in the program, such conviction makes completion unsuccessful regardless of when the underlying conduct occurred. The court agreed, stating that its interpretation of the accelerated rehabilitation statute was that "to apply for it and to ultimately be deemed successful there [must] be no convictions upon application nor dismissal. Now, yours is a little bit more of a difficult situation. You're entitled to have a hearing, as is the state, with regard to a termination of the [program], but I think you're in a precarious situation when there's a conviction while on accelerated rehabilitation." When defense counsel argued that the conduct underlying the defendant's three convictions took place before the defendant was admitted into the program, the court responded, "I don't think that matters. A conviction is a conviction." The court then continued the case to allow the parties an opportunity to submit briefs on the issue.

The defendant thereafter filed a motion to dismiss all three of the original charges and requested that the court find that he had successfully completed the program.[4] At the hearing on the motion, the defendant acknowledged that between the time that his application had been accepted and when he was granted entry into the program, he had been arrested several times and that the hearing on whether to grant the application had been continued numerous times because of substance abuse problems for which the defendant had been seeking treatment. The defendant argued that since his participation in the program, he had "shaped up his act" and that accelerated rehabilitation probation should be considered no differently than postconviction probation.

The court disagreed with the defendant's characterization of accelerated rehabilitation probation as equivalent to postconviction probation, noting that the accelerated rehabilitation statute was intended to benefit a defendant who had not been convicted of a crime. The court explained that the "intention of the legislature through the accelerated rehabilitation statute was . . . trying to preserve somebody's record. You come in clean, you go out clean, you get a dismissal. You come in clean, you don't go out clean, you have not earned a dismissal. The [defendant's] status has changed. That's the distinction that I see." While the defendant

acknowledged that the purpose and benefit of accelerated rehabilitation is to allow a defendant who has made a single mistake to use the program to preserve a clean record and that he did not have a clean record because of his other convictions, he argued, nonetheless, that the law governing violations of postconviction probation should apply to determine whether he satisfactorily completed the accelerated rehabilitation probationary period. In the defendant's view, he was entitled to a dismissal of the charge of interfering with an officer because (1) the state had been aware of the pending charges prior to the defendant's entry into the program, (2) the defendant's record was clean with the exception of the convictions obtained during his participation in the program for conduct that occurred before he was admitted into the program, and (3) during his participation in the program, the defendant had done everything that the court had required of him.

Ultimately, the court denied the defendant's motion to dismiss the charge of interfering with an officer. The court stated: "To me, what it comes down to is what the intent and purpose is of accelerated rehabilitation. [It] is that, not only is it a crime not of a serious nature and that you will not offend in the future, but [also] that you have no criminal record not allowing you to be eligible for accelerated rehabilitation . . . going into the application process, [during] the pendency and [at] the completion process of the accelerated rehabilitation. And my belief is that when one is convicted during accelerated rehabilitation and albeit, convicted for a new offense or convicted for an offense that was pending at the time you were granted accelerated rehabilitation, accelerated rehabilitation no longer becomes a successful completion because you no longer are without a criminal record.

"To me, the intent of the legislature was that to . . . get [accelerated rehabilitation] and to succeed at it, you had to have no criminal record. Once a criminal record exists, accelerated rehabilitation has been and the intent of the statute has been violated. That is the basis of my decision. That is the reason I distinguish it from a nonaccelerated rehabilitation case when we're talking about conviction versus a pretrial diversionary status." This appeal followed.

On appeal, the defendant contends that accelerated rehabilitation is a form of probation, albeit pretrial, and, as such, the law governing violations of postconviction probation for conduct occurring before the probationary period begins also should apply to the finding of successful completion of accelerated rehabilitation.[5] The state counters that the trial court correctly determined that the defendant's repeated convictions prohibited a finding of satisfactory completion because the purpose of accelerated rehabilitation could no longer be served. We agree with the state.

Whether a conviction obtained while participating in the program for conduct that occurred prior to acceptance into the program, compels a finding that a defendant has failed to satisfactorily complete the program is a question of first impression for this court. The legislature's repeated use of the term "probation" in the accelerated rehabilitation statute renders § 54-56e ambiguous because it results in two reasonable interpretations of the meaning and import of the term. By referring to probation, the legislature could have intended to incorporate the entirety of the Probation Act, General Statutes § 53a-28 et seq., the postconviction statutory scheme, and, more specifically, the law governing violations of postconviction probation, into the accelerated rehabilitation framework. If so, a conviction resulting from conduct that occurred prior to the commencement of the accelerated rehabilitation probationary period could not be considered in the court's determination of satisfactory completion. As we explain in this opinion, however, it is equally reasonable that the legislature did not intend that accelerated rehabilitation probation be akin to postconviction probation for two reasons: (1) there are significant differences between the accelerated rehabilitation statute and the Probation Act; and (2) the legislature did not reference explicitly provisions of the Probation Act in the accelerated rehabilitation statute, as it did in the statute governing the suspension of prosecution and the ordering of treatment for alcohol or drug-dependent persons, General Statutes § 17a-696, a similar pretrial diversionary program (dependency treatment statute). Because the invocation of the term probation in the accelerated rehabilitation statute does not resolve whether the law governing violations of postconviction probation should apply to accelerated rehabilitation probation, we look to extratextual evidence to determine the meaning of the term probation within the accelerated rehabilitation statutory scheme. The clarity and consistency of the express statements of legislators over the course of the forty-one years of the statute's existence persuades us that the legislature intended for a trial court to find that a defendant has not satisfactorily completed accelerated rehabilitation if he receives a conviction during participation in the program.

Because this appeal presents an issue of statutory construction, our review is plenary. See *State* v. *Thompson*, 307 Conn. 567, 577, 57 A.3d 323 (2012). "In construing a statute, the first objective is to ascertain the intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of the case, including the question of whether the language actually does apply. . . . General Statutes § 1-2z directs this court to first consider the text of the statute and its relationship to other statutes to determine its meaning. Only if we determine that the statute is not plain and

unambiguous and does not yield absurd or unworkable results may we consider extratextual evidence of its meaning, such as the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . We presume that the legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Ward*, 306 Conn. 698, 707–708, 52 A.3d 591 (2012).

We begin our analysis with the relevant statutory provision. General Statutes (Supp. 2014) § 54-56e (a) provides in relevant part: "There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime or crimes or a motor vehicle violation or violations for which a sentence to a term of imprisonment may be imposed, which crimes or violations are not of a serious nature." Subsection (d) of that statute further provides in relevant part: "Any such defendant shall appear in court and shall, under such conditions as the court shall order, be released to the custody of the Court Support Services Division . . . . If the defendant refuses to accept, or, having accepted, violates such conditions, the defendant's case shall be brought to trial. The period of such probation or supervision, or both, shall not exceed two years. . . ." General Statutes (Supp. 2014) § 54-56e (d). Finally, General Statutes (Supp. 2014) § 54-56e (f) provides in relevant part: "If a defendant released to the custody of the Court Support Services Division satisfactorily completes such defendant's period of probation, such defendant may apply for dismissal of the charges against such defendant and the court, on finding such satisfactory completion, shall dismiss such charges. . . ."

Because the accelerated rehabilitation statute does not define probation, we compare the accelerated rehabilitation and postconviction probation statutes to determine whether the use of the term probation is consistent in both schemes. Although there are superficial similarities between accelerated rehabilitation probation and postconviction probation, two significant differences between the probations suggest that the term probation as used in the two statutory schemes is not to be treated similarly when determining whether accelerated rehabilitation probation has been completed successfully. First, accelerated rehabilitation probation and postconviction probation are imposed at different times. Accelerated rehabilitation probation is a "*pretrial* program for . . . persons accused of a crime or crimes or a motor vehicle violation or viola-

tions for which a sentence to a term of imprisonment may be imposed, which crimes or violations are not of a serious nature." (Emphasis added.) General Statutes (Supp. 2014) § 54-56e (a). It only is available prior to a conviction and operates as a suspension of prosecution. Postconviction probation, on the other hand, "is, first and foremost, a penal alternative to incarceration . . . ." *State* v. *Smith*, 207 Conn. 152, 168, 540 A.2d 679 (1988); see also General Statutes § 53a-28 (b). Consequently, postconviction probation exists only after the service, or suspension, of a period of incarceration.

Second, and relatedly, the procedures and consequences for violations of the conditions of probation are starkly different under accelerated rehabilitation probation and postconviction probation. Under accelerated rehabilitation, if a defendant "refuses to accept, or, having accepted, violates such conditions [of probation], the defendant's case shall be brought to trial." General Statutes (Supp. 2014) § 54-56e (d). Thus, should a defendant participating in the program violate any of the terms set by the court, the court simply terminates accelerated rehabilitation and the case is brought to trial.

A finding of a violation of postconviction probation, because it implicates a liberty interest and, thus, must comport with the requirements of due process; *State* v. *Davis*, 229 Conn. 285, 294–95, 641 A.2d 370 (1994); requires significantly more procedural safeguards than a finding of unsatisfactory completion of accelerated rehabilitation. When a defendant is charged with a violation of postconviction probation, he must receive notice and a probation revocation hearing within 120 days after arraignment. General Statutes (Supp. 2014) § 53a-32 (c). He must be informed of the allegations of the violation, his right to counsel, his right to cross-examine witnesses and his right to present evidence. General Statutes (Supp. 2014) § 53a-32 (c). Should the court determine that a violation of probation has been established, it may "(1) [c]ontinue the sentence of probation . . . (2) modify or enlarge the conditions of probation . . . (3) extend the period of probation . . . provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation . . . . If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. . . ." General Statutes (Supp. 2014) § 53a-32 (d).[6]

On the basis of our examination of the differences between accelerated rehabilitation probation and postconviction probation, we cannot conclude that the language of the statute reveals a legislative intent to treat the term probation in § 54-56e as incorporating the laws governing postconviction probation into the program. Moreover, the ambiguity in the use of the term probation in the accelerated rehabilitation statute is not

resolved by comparing it to the dependency treatment statute. As in the program, a defendant's eligibility for suspension of prosecution under the dependency treatment statute is limited to specific offenses, and a trial court must make certain findings prior to acceptance into the dependency treatment program. General Statutes § 17a-696 (a) and (b). Also like accelerated rehabilitation, the court may set conditions for participation in the dependency treatment program and must make requisite findings prior to a dismissal of the charges. General Statutes §§ 17a-696 (c) and 17a-697. Particular to the dependency treatment statute, however, is the explicit option for the trial court to require compliance with General Statutes § 53a-30, which sets forth the standard conditions of postconviction probation.[7] "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *M. DeMatteo Construction Co.* v. *New London*, 236 Conn. 710, 717, 674 A.2d 845 (1996). The unambiguous reference to § 53a-30 in the dependency treatment statute in juxtaposition to the language in the accelerated rehabilitation statute, which only refers to "conditions as the court shall order"; General Statutes (Supp. 2014) § 54-56e (d); supports the interpretation that, by not referencing the standard conditions of postconviction probation provision in the accelerated rehabilitation statute, the legislature did not intend for that provision, and its attendant rules, to apply to the program.

Moreover, "it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Citation omitted; internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 618, 72 A.3d 394 (2013). If the legislature had intended to incorporate the standard conditions of postconviction probation and the law governing violations of those conditions, it could have done so expressly by referencing § 53a-30, as it did in § 17a-696 (c). Thus, one could infer that the legislature did not intend for all of the laws governing postconviction probation to apply to accelerated rehabilitation probation. Indeed, it seems unlikely that the legislature would import § 53a-30, which imposes stringent conditions of probation on persons who have been convicted of a crime, into a program designed for persons who have been accused of committing only nonserious crimes and are presumed not to offend in the future.

Nevertheless, the analysis of the plain language of the statutory text and relevant related provisions does not categorically resolve whether the legislature intended to incorporate the law governing violations of postconviction probation into the accelerated rehabilitation scheme. Despite the significant practical differ-

ences between accelerated rehabilitation probation and postconviction probation, and the fact that the legislature explicitly referenced § 53a-30 in the dependency treatment statute, the meaning of the term probation in the accelerated rehabilitation statute is unclear. Because the statutory text does not resolve the question of whether the legislature intended for the law governing violations of postconviction probation to apply to the accelerated rehabilitation statute, we must turn to the purpose of the accelerated rehabilitation statute by examining its legislative history. That review unequivocally reflects the purpose of § 54-56e and compels our conclusion that when a defendant is convicted of a crime while participating in the program, the trial court must deny a motion to dismiss the charges, and return the case to the trial docket.

Since the legislature's enactment of the accelerated rehabilitation statute in 1973,[8] the legislature has repeatedly and consistently expressed that the purpose of accelerated rehabilitation is to give first time offenders who have been charged with nonserious crimes a second chance to keep their criminal record clean. In 1973, during debate in the House of Representatives on the creation of the program, Representative Samuel S. Freedman, the sponsor of the bill, addressed the purpose of the accelerated rehabilitation statute, stating: "This bill affects the first offender, most often the victimless crime." 16 H.R. Proc., Pt. 11, 1973 Sess., pp. 5712–13. After outlining the procedural process for determining a defendant's eligibility for, and participation in, the program, Representative Freedman noted that a defendant would be "put on probation of a period up to two years and if he successfully completes his probationary period, the [c]ourt may then dismiss the charge entirely. If he does not I repeat—if he does not successfully complete his probation he must then come back and face the [c]ourt for trial. . . . [W]hat this will allow us to do is to utilize in the more hopeful cases, the cases where people are hurting themselves and not others for the most part, all of the community services which are available. . . . [I]n Pennsylvania it's used very sparingly only for the more hopeful cases, but it has been highly successful and I would recommend its passage and adoption here." Id., pp. 5714–15.

In 1974, the House of Representatives debated a revision that gave the court, rather than the state's attorney, the discretion to grant an application for accelerated rehabilitation, and allowed persons charged with class A, B or C felonies to be eligible for participation in the program if "good cause is shown . . . ."[9] House Bill No. 5481, 1974 Sess. Representative James F. Bingham remarked during the debate that in the previous session, the legislature had "passed [the accelerated rehabilitation] bill which permitted the diversion of certain people away from the [c]ourt system into probation with the possibility of receiving a dismissal *so that they*

*would not have a record on their name.*" (Emphasis added.) 17 H.R. Proc., Pt. 2, 1974 Sess., p. 627.

The legislature addressed the purpose of accelerated rehabilitation in 1985, when it legislatively overruled this court's decision in *State* v. *Parker*, 194 Conn. 650, 659, 485 A.2d 139 (1984), in which we held that a denial of a motion to dismiss following the purported satisfactory completion of the program was not a final judgment for purposes of appeal. Public Acts 1985, No. 85-374. During the House debate on an amendment to the bill,[10] Representative Christopher Shays remarked: "We got it in 1973, and accelerated rehabilitation is a program that says, that the court can give you a program in which you have to fulfill certain obligations, and that if you fulfill this program . . . two years after you have successfully completed accelerated rehabilitation, there is a record that you went through the program, but the record of your offense disappears. *You have no record.* It's a very attractive program.

"It was only supposed to affect the individual who say, went into a supermarket, and an elderly woman, say, and made a foolish mistake and shoplifted, and we wanted to prevent this kind of person from having a 'record'. It was also supposed to apply to maybe a young person who foolishly did something which might give them a 'record' that would follow them for the rest of their lives." (Emphasis added.) 28 H.R. Proc., Pt. 14, 1985 Sess., pp. 5048–49.

The legislature again discussed the purpose of accelerated rehabilitation in 1993, during debate in the Senate on a bill that allowed individuals who had been charged with multiple crimes or motor vehicle violations for a single transaction or for transactions within a short period of time of each other to be eligible for accelerated rehabilitation. Senate Bill No. 977, 1993 Sess. Senator George Jepsen, in describing the impact that the bill would have on the program, explained that "the eligibility for accelerated [rehabilitation] remains the same standard that the crimes cannot be very serious in nature. The judges look at the cases [individually] to decide whether the person should be in jail [or] not and *it is available only one time.* You get one bite at the apple." (Emphasis added.) 36 S. Proc., Pt. 6, 1993 Sess., pp. 2143–44. Senator George L. Gunther, however, opposed the bill, stating: "The thing that bothers [me] is there are many alternative ways of having a person serve. Giving him the distinction of an accelerated rehabilitation I think sort of semi-wipes his slate as if it is not a serious type thing and some of the examples that [Senator Jepsen] gave us just now, such [as] multiple minor crimes and that type of thing, are nonetheless criminal in my book and I think we shouldn't do that. We should go to the alternate sentencing. We should go to other ways we have and they don't necessarily have to be locked up in a jail in order to serve that

time, but not to give him the designation of accelerated rehabilitation." Id., pp. 2144–45.

In 1995, the House of Representatives was debating whether to exclude persons charged with class A and B felonies from eligibility for accelerated rehabilitation, and to allow persons charged with class C felonies to be eligible only if good cause was shown. Representative Dale Radcliffe, arguing in favor of the bill, succinctly stated the purpose of accelerated rehabilitation: "We have made the program exactly what it should have been, a program for minor offenses, *for individuals who make one mistake*, to give that individual a second chance and *to give that individual a clean record*." (Emphasis added.) 38 H.R. Proc., Pt. 12, 1995 Sess., p. 4182. Senator Thomas F. Upson reiterated that position during the Senate debate: "Remember, this is allowing the state . . . allowing someone, saying you're not going to get a record. What you did is not of a serious nature and *you deviated from your path once*. Therefore, we're going to let you continue your path on life and *not have a record*." (Emphasis added.) 38 S. Proc., Pt. 10, 1995 Sess., p. 3472.

In 2001, the Senate debated whether to allow persons who had been charged with the class B felony of larceny in the first degree, in cases in which no physical force was involved, to apply for accelerated rehabilitation. 44 S. Proc., Pt. 4, 2001 Sess., pp. 999–1002. Senator John Kissel stated: "[Accelerated rehabilitation] allows people that one bite of the apple so that they can go forward as *productive citizens with a clean record* and again, I think it's a valuable program. It works to reduce a lot of the pressures in the criminal justice system and I think a lot of people have benefitted by it. Not only victims, but also the accused and they've turned their lives around and overall I would support the bill." (Emphasis added.) Id., pp. 1001–1002.

The legislative intent regarding the purpose of the accelerated rehabilitation statute is to give onetime offenders an opportunity to demonstrate that the offense was a onetime occurrence and to reward them by erasing any evidence of a criminal record. In light of the legislative intent, we conclude that accelerated rehabilitation is intended to allow an offender to maintain a clean criminal record, not to eliminate one of multiple convictions that a person might receive. Its purpose is to ensure that those who have made one minor mistake will not have a record of conviction that could impact them negatively in the future.

Given the purpose of the accelerated rehabilitation statute, it is not reasonable to conclude that the legislature intended, as the defendant claims, that the law governing violations of postconviction probation applies to accelerated rehabilitation probation and that his convictions, obtained during the same time period as his participation in the program, should not be con-

sidered by the court in its finding of satisfactory completion because the conduct occurred prior to his acceptance into the program. To conclude that the date of the defendant's conduct, rather than the date of his conviction, controls a trial court's satisfactory completion determination in the accelerated rehabilitation context would run contrary to the purpose of the statute.[11] Because a conviction obtained during the period of a defendant's participation in the program is contrary to the purpose of the accelerated rehabilitation statute, a defendant cannot be deemed to have satisfactorily completed the program. Thus, the trial court in the present case properly denied the defendant's motion to dismiss the charge of interfering with an officer, because the defendant's multiple convictions obtained during his participation in the program obligated the court to enter the denial.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] Although § 54-56e has been amended by the legislature several times since the events underlying the present case; see, e.g., Public Acts 2010, No. 10-43, § 1; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the 2014 supplement of the statute.

[2] The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] The record does not reveal where the defendant was seeking treatment.

[4] The defendant noted in the motion that the agreement with the state was that the charge of interfering with an officer was the only one that was eligible for accelerated rehabilitation and that the other two charges would be nolled upon his successful completion of the program.

[5] General Statutes (Supp. 2014) § 53a-32 (a) provides in relevant part: "At any time during the period of probation . . . the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation . . . ."

In *State* v. *Deptula*, 34 Conn. App. 1, 10, 639 A.2d 1049 (1994), the Appellate Court held that "a violation of probation cannot occur until the probationary period has begun."

[6] Other differences between accelerated rehabilitation probation and postconviction probation also support our conclusion that the legislature did not intend to treat the two types of probation similarly. Those differences include: (1) the types of crimes that are eligible, as well as the eligibility criteria, for each type of probation; see General Statutes § 53a-29 (a); General Statutes (Supp. 2014) § 54-56e (c); (2) the procedures for setting and modifying conditions with which a defendant must comply; see General Statutes § 53a-30 (a) and (b); General Statutes (Supp. 2014) § 54-56e (d); and (3) the disposition of a case upon completion of probation. See General Statutes (Supp. 2014) § 54-56e (f).

[7] General Statutes § 17a-696 (c) provides in relevant part: "The court or the Court Support Services Division may require that the person (1) comply with any of the conditions specified in subsections (a) and (b) of section 53a-30 . . . ."

[8] The accelerated rehabilitation statute originally was enacted by No. 73-641, § 1, of the 1973 Public Acts, and was codified at General Statutes (Rev. to 1975) § 54-76p. In 1981, the statute was transferred to § 54-56e.

[9] The original statute had excluded persons charged with class A, B and C felonies from eligibility for the program. Public Acts 1973, No. 73-641, § 1.

[10] The amendment sought to exclude persons charged with class A and B felonies from eligibility. It did not pass.

[11] By concluding that the law governing violations of postconviction probation does not apply to accelerated rehabilitation probation, we do not imply that none of the laws regarding postconviction probation would ever be applicable. There could be situations in which a postconviction probation statute would also apply to accelerated rehabilitation. See, e.g., *State* v.

*Tucker*, 219 Conn. 752, 762–63, 595 A.2d 832 (1991) (applying General Statutes § 53a-33, which provides for termination of postconviction probation for good cause prior to completion, to accelerated rehabilitation case).

––––––––––––––––––––––––––––